Celia A. WREN, Petitioner,

v.

MERIT SYSTEMS PROTECTION BOARD, Respondent.

No. 80–1667.

United States Court of Appeals, District of Columbia Circuit.

Argued April 6, 1982.

Decided June 22, 1982.

Richard A. Hannibal, Student Counsel,* with whom Steven H. Goldblatt, Philadelphia, Pa. (appointed by this Court) for petitioner.

Lynn S. Lichtenstein, Sp. Asst. U. S. Atty., with whom Charles F. C. Ruff, U. S. Atty., Washington, D. C., at the time the brief was filed. Royce C. Lamberth, Kenneth M. Raisler, Michael J. Ryan and Whitney Adams, Asst. U. S. Attys., Washington, D. C., were on the brief, for respondent.

Before ROBINSON, Chief Judge, WALD, Circuit Judge, and LARSON,** United States Senior District Judge for the District of Minnesota.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

█ This is a petition by a former probationary employee of the Department of the Army ("Army") seeking review of an order of the Merit Systems Protection Board ("MSPB" or "Board") dismissing her appeal from a job termination for lack of jurisdiction. Petitioner claims that her discharge was in retaliation for "whistleblowing" on official mismanagement, waste, abuse of authority and violation of regulations and was therefore a prohibited personnel practice under 5 U.S.C. § 2302(b)(8). She requests that the Board's order be vacated and the case remanded to the Board so that

* Entered an appearance as Student Counsel pursuant to Rule 20 of the General Rules of this Court.

** Sitting by designation pursuant to 28 U.S.C. § 294(d).

it can review the decision of the Office of Special Counsel of the Board ("OSC") refusing to investigate petitioner's allegation of reprisal for whistleblowing. The OSC's decision to terminate its investigation into the cause of petitioner's dismissal was rendered as a result of a separate petition filed by petitioner at the same time she sought MSPB review. After petitioner's appeal to the Board had been dismissed, the OSC refused to exercise 5 U.S.C. § 1206 authority to investigate petitioner's allegation, finding that it was more appropriately resolved "under an administrative appeals procedure or applicable grievance procedure." Petitioner's Appendix (P.A.) I–7. Although we agree that the OSC's failure to investigate the petition in this case was not justified by the reasons given, we cannot afford petitioner any relief in this appeal. If judicial relief from the OSC's inaction lies at all, it must be sought in a separate action. The only matter properly before this court is the Board's decision that it had no jurisdiction over Wren's appeal from the Army's adverse personnel action. We find that decision a correct one. Accordingly, we must *affirm* the decision of the Board.

I. BACKGROUND

The Army appointed petitioner, Celia A. Wren, Guidance Counselor, GS–1710, Grade 9 at the Wertheim Educational Center, West Germany, on August 21, 1978, and dismissed her on March 9, 1979. The notice of termination stated that petitioner's job performance was unsatisfactory, that petitioner was uncooperative and that she failed to attend job performance seminars. Record (R.) 7–8. The notice also informed petitioner that she had no right to appeal the Army's decision unless she alleged that it was based upon discrimination.[1] Never-

1. Record (R.) 8. The notice read, in relevant part:
 You do not have the right to appeal this action. If you feel that this termination was based on race, color, religion, sex, national origin, or age, or handicap whether mental or physical, you must submit an appeal to the US Civil Service Commission . . . .

theless, on March 7, 1979, petitioner appealed to the MSPB, claiming that her termination was a reprisal for whistleblowing regarding agency regulatory violations and mismanagement, and therefore a prohibited personnel practice under Title I, section 101(a) of the Civil Service Reform Act of 1978 ("CSRA"), 5 U.S.C. § 2302(b)(8). Simultaneously, petitioner requested the OSC to undertake an investigation into her allegation pursuant to 5 U.S.C. § 1206(a).

## II. THE AGENCY DECISION

After examining the CSRA [2] and regulations [3] promulgated thereto, the Presiding Official held that there was no "right of appeal to the MSPB for excepted service employees who are terminated during a trial period." *Appeal of Celia A. Wren*, MSPB Docket No. DC315H99007 (May 16, 1979), slip op. at 1, 3; P.A. III–2, 4. Consequently, he dismissed the petition for lack of jurisdiction.

On appeal, the Board affirmed the dismissal for the same reason. *Wren v. Department of the Army*, MSPB Docket No. DC315H99007 (April 17, 1980), slip op. at 1 (hereinafter *Wren*); P.A. III–6. The Board also observed, however, "that procedures do exist whereby [Wren's] . . . allegation may be investigated by the Special Counsel . . . " *Wren* at 3 (emphasis added); P.A. III–8. Accordingly, the Board referred the petition to the Acting Special Counsel "for such action as she may find

appropriate." *Id.; see also* P.A. I–1 (MSPB Docket Sheet). But by the time the Board referred the petition to the OSC, that office had, apparently, already determined not to conduct any investigation.

As previously noted, petitioner had sought an OSC investigation in March, 1979 at the same time she filed her MSPB appeal. P.A. I–3. On August 27, 1979, the Special Counsel requested further information regarding the complaint. *Id.* at 4. Documents were sent by petitioner's counsel from West Germany on October 22, 1979, but not received by the OSC until November 19, 1979, *id.* at 6, four days after the case had been closed for failure to submit the requested information. *Id.* at 7. It does not appear from the record that the case was reopened upon receipt of the documents, Respondent's Brief at 8, or even that petitioner was notified at that time that the case had been closed. Nor was the case later reopened after the Board referred it to the OSC in April, 1980.[4] On September 24, 1980, petitioner wrote to inquire about the status of the OSC investigation, and on October 15, 1980, was informed that her case had been closed almost a year earlier, shortly before the requested information had been received. P.A. I–7. In addition, the OSC informed petitioner that

[T]his Office is authorized to receive and investigate allegations of certain activities prohibited by civil service law, rule, or regulation (primarily the prohibited personnel practices set forth in 5 U.S.C.

---

**2.** 5 U.S.C. §§ 1206, 2302, 3321, 7502, 7511, 7512 and 7701.

**3.** 5 C.F.R. §§ 315 and 752.

**4.** Whether it would have been legally sufficient if the OSC had timely notified Wren that her case had been closed for failure to supply requested documentation is not before us. Under *ordinary* circumstances, any reasonable time limits on a filing requirement must be followed. The circumstances of this case (*i.e.*, the distance involved and the exclusivity of OSC remedy), however, may suffice to take it out of the ordinary category. And we note that cases which the OSC has once closed are "frequently" reopened upon receipt of new information. *See Borrell v. United States International Communications Agency,* 682 F.2d 981, at 985 (D.C.Cir. 1982). Here, the documents requested

were sent from West Germany within 60 days of the request, but not received for almost another 30 days. Neither the statute nor OSC regulations prescribe a particular time period for receipt of requested information, nor, in this case, did the request itself contain a deadline. The case was closed only four days before the documentation actually arrived. And, at that time, no reasons were given for closing the case. When reasons were finally given the following year, in addition to Wren's failure to lodge documents in a "timely" (undefined by statute or regulation) manner, an inapplicable statutory provision was cited. *See* p. 874 *infra*. From the perspective both of time and content, the "statement of reasons" issued must be considered "arbitrary and capricious."

2302) and may recommend (but not order) corrective action when it is determined that a prohibited personnel practice has been or is being committed. This Office, however, is not authorized to deal with or seek redress for employee complaints or grievances which may be resolved more appropriately under established complaint, grievance, or appeals procedures *unless it involves a prohibited personnel practice specified in 5 U.S.C. 2302.* [5 U.S.C. 1206(a)(1) and (e) ]

Upon review of the information you provided, we have determined that your allegations deal with matters that may be resolved more appropriately under an administrative appeals procedure or applicable grievance procedure. We, therefore, will not undertake an investigation in your case at this time.[5]

*Id.* (emphasis added). Thus, so far as it appears on the record, the merits of petitioner's allegation that she had been fired in retaliation for whistleblowing, a prohibited personnel practice, were never investigated by the OSC. Instead, a year after closing the investigation, the OSC directed petitioner to pursue her grievance along a "more appropriate" route, although that route had, in fact, already been declared inaccessible to her (and all probationary employees) by the MSPB.

### III. WREN'S PETITION

On June 16, 1980, Wren filed a timely petition in this court for review of the Board's decision dismissing her appeal for lack of jurisdiction. After filing this appeal, petitioner received notice from the OSC that it had closed her case one year earlier. Thus, although this appeal is from the Board's decision to dismiss, petitioner also argues that the case must be remanded to the Board so that it can direct the OSC to fulfill its statutory responsibility to investigate petitioner's prohibited personnel practice allegation, which had been referred to it by the Board. Petitioner stresses the irony of being denied relief by the MSPB which assumed that OSC relief was available and then being denied relief by the OSC which assumed that MSPB relief was available.

Petitioner concedes on appeal that as a non-tenured employee she is "not statutorily entitled, per se, to direct review of her termination by the MSPB." Petitioner's Brief at 7. The statute grants only "employees" the right to appeal to the MSPB from an adverse agency personnel action. 5 U.S.C. § 7701(a); *see also Piskadlo v. Veterans' Administration,* 668 F.2d 82 (5th Cir. 1982). An employee is defined as "an individual in the competitive service who is not serving a probationary or trial period under an initial appointment or who has completed 1 year of current continuous employment under other than a temporary appointment limited to 1 year or less . . . ." 5 U.S.C. § 7511(a)(1)(A); *see also* 5 C.F.R. §§ 315. 801–.802. At the time of her termination, petitioner had been employed for approximately nine months. However, petitioner reasons: the Board has jurisdiction over cases involving reprisals against whistleblowers brought to it by the OSC, 5 U.S.C. § 1206(c)(1)(A); and once such matters have been brought to the Board, it rather than the OSC has power to take "final agency action," 5 U.S.C. § 1205(a)(1); therefore the Board's jurisdiction over worthy whistleblower cases will be undermined if petitions to the OSC are not investigated sufficiently to determine whether they have merit. Thus, she argues, the Board has authority here at least to order the OSC to undertake a proper investigation of petitioner's allegation.

■ Unfortunately, we cannot accept petitioner's statutory construct. Although we agree that the OSC must, under the terms of the Act, investigate an alleged prohibited personnel practice involving reprisals

---

**5.** Although the OSC statement alone is obtusely worded and might conceivably be interpreted to mean that the OSC actually determined that petitioner's allegation did not involve a prohibited personnel practice (but rather a different kind of statutory or rule violation not requiring investigation), we do not adopt that interpretation because the complaint clearly alleged retaliation for whistleblowing.

against whistleblowing to the extent necessary to determine whether there is a reasonable probability that the allegation is meritorious, and that it must issue reasons for terminating an investigation, we can find no MSPB authority to enforce these statutory requirements.[6] Therefore, if the OSC fails to perform its statutory duties, as here, relief—if it lies at all—must be sought in a separate action in the district court to compel the OSC to perform its statutory duties. *Cf. Dunlop v. Bachowski*, 421 U.S. 560, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975) (5 U.S.C. §§ 702 and 704).

## IV. STATUTORY ANALYSIS

■ A primary purpose of the CSRA was to safeguard employees—tenured and nontenured—who "blow the whistle" on illegal or improper official conduct. Title I, section 101(a) of the Act proclaims:

(9) Employees should be protected against reprisal for the lawful disclosure of information which the employees reasonably believe evidences—

(A) a violation of any law, rule, or regulation, or

(B) mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety.

5 U.S.C. § 2301(b)(9). Under the Act, it is a prohibited personnel practice for an official to retaliate against an employee for

(A) a disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences—

(i) a violation of any law, rule, or regulation, or

(ii) mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety,

if such disclosure is not specifically prohibited by law and if such information is

not specifically required by Executive order to be kept secret in the interest of national defense or the conduct of foreign affairs; or

(B) a disclosure to the Special Counsel of the Merit Systems Protection Board, or to the Inspector General of an agency or another employee designated by the head of the agency to receive such disclosures, of information which the employee or applicant reasonably believes evidences—

(i) a violation of any law, rule, or regulation, or

(ii) mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety . . . .

5 U.S.C. § 2302(b)(8). "Protecting employees who disclose government illegality, waste, and corruption" was regarded as "a major step toward a more effective civil service." S.Rep. No. 969, 95th Cong., 2d Sess. 8 (1978), *reprinted in* U.S.Code Cong. & Admin.News 1978, p. 2723, 2730. II House Committee on Post Office and Civil Service, 95th Cong. 1st Sess., Legislative History of the Civil Service Reform Act of 1978 at 1632 (1979) (hereinafter Legislative History). The Senate Report explained:

In the vast Federal bureaucracy it is not difficult to conceal wrongdoing provided that no one summons the courage to disclose the truth. Whenever misdeeds take place in a Federal agency, there are employees who know that it has occurred, and who are outraged by it. What is needed is a means to assure them that they will not suffer if they help uncover and correct administrative abuses. What is needed is a means to protect the Pentagon employee who discloses billions of dollars in cost overruns, the GSA employee who discloses widespread fraud, and the nuclear engineer who questions the safety of certain nuclear plants. These conscientious civil servants deserve statu-

**6.** *Cf. Associated Builders & Contractors, Inc. v. Irving*, 610 F.2d 1221 (4th Cir. 1979) (NLRB General Counsel's unreviewable authority over the filing of an unfair labor practice); *National Maritime Union v. National Labor Relations Board*, 423 F.2d 625 (2d Cir. 1970) (same);

*McLeod v. International Brotherhood of Teamsters*, 330 F.2d 108 (2d Cir. 1964) (same). *Cf. also Turgeon v. Federal Labor Relations Authority*, 677 F.2d 937 (D.C.Cir.1982) (same, but involving General Counsel of Federal Labor Relations Authority).

tory protection rather than bureaucratic harassment and intimidation.

*Id.*, U.S.Code Cong. & Admin.News 1978, p. 2730. In a similar vein, the House Report, H.R.Rep. No. 1403, 95th Cong., 2d Sess. 386, *reprinted in* I Legislative History 760, explained:

> Right now, a Federal employee who "blows the whistle" (sometimes even to a congressional committee) on activities at his agency which are a violation of law, mismanagement, abuse of authority, waste of funds or a danger to the public may be more likely to be harassed or fired than praised or rewarded. There is no effective means other than drawn out administrative and court proceedings for a whistleblower to set things right. We all lose when reasonable and constructive criticism of agencies by those who know them best is stifled.

Congress designated the MSPB and the OSC to protect whistleblowers against reprisal.

▉▉▉ The MSPB was entrusted with the appellate review authority over agency personnel action formerly vested in the Civil Service Commission. 5 U.S.C. § 1205; *see also* H.R.Rep. No. 1403, 95th Cong., 2d Sess. at 6 (1978), *reprinted in* I Legislative History 643. As this court, *per* Bazelon, J., recently detailed in *Frazier v. Merit Systems Protection Board,* 672 F.2d 150, 154–55 (D.C.Cir.1982) (hereinafter *Frazier*), there are two routes by which whistleblowing controversies can reach the Board for review: (1) a Chapter 77 appeal from an adverse agency personnel action, which can only be brought by tenured employees, 5 U.S.C. §§ 7701–03; and (2) a section 1206(c)(1)(B) petition for "corrective action" by the OSC. The only route to MSPB review open to petitioner, a non-tenured employee, was *via* the OSC.

The OSC was modeled after the Office of General Counsel of the National Labor Relations Board ("NLRB"). *See Civil Service Reform: Hearings on H.R. 11280 Before the House Comm. on Post Office and Civil Service,* 95th Cong., 2d Sess. 820 (1978). Both offices are filled by Presidential appointment, 5 U.S.C. § 1204; 29 U.S.C. § 153(d), and operate substantially independently of the agency with which they are associated. 5 U.S.C. § 1206; 29 U.S.C. § 160. The semi-autonomous nature of the OSC, like that of the General Counsel of the NLRB, was deemed necessary to allow it to fulfill its investigative and prosecutorial functions—to investigate illegal employment practices and seek their correction before the MSPB. *See Senate Committee on Governmental Affairs, Markup Session on S. 2640, Civil Service Reform Act of 1978* at 21 (unpublished transcript, May 22, 1978) (remarks of Sen. Javits). *See also Hearings Before the Subcommittee on the Civil Service of the House Committee on Post Office and Civil Service,* 96th Cong., 2d Sess. 11, 16 (1980) (hereinafter *Civil Service Reform Oversight, 1980—Whistleblower*). The sponsors of the CSRA expected the OSC to "serve[ ] first and foremost as the protector of employees' rights and as a conduit to prevent reprisals and help agencies purge wrongdoing." 120 Cong.Rec. S 14303 (daily ed. Aug. 24, 1978) (letter of bill sponsors to full Senate), *reprinted in* II Legislative History 1678. Thus, the Special Counsel is, as this court has recently remarked, "an ombudsman responsible for investigating and prosecuting violations of the Act." *Frazier,* 672 F.2d at 162.

▉▉▉ In fulfilling its ombudsman or prosecutorial responsibility, the OSC is *required* by the Act to investigate an alleged prohibited personnel practice, and, if it terminates that investigation for lack of merit, to issue a written statement of reasons:

> (1) The Special Counsel shall receive any allegation of a prohibited personnel practice and *shall investigate the allegation to the extent necessary* to determine whether there are reasonable grounds to believe that a prohibited personnel practice has occurred, exists, or is to be taken.

> (2) If the Special Counsel terminates any investigation under paragraph (1) of this subsection, the Special Counsel *shall prepare and transmit to any person on whose allegation the investigation was initiated a written statement* notifying

the person of the termination of the investigation and the reasons therefor.

5 U.S.C. § 1206(a) (emphasis added); *see also* 5 C.F.R. 1250. Yet, in this case, petitioner was not informed that her case had been closed until a year later, when it was explained that requested documentation had arrived four days too late and that, in any event, her case was "more appropriately" resolved elsewhere—although by this time the MSPB had dismissed the petitioner's appeal for lack of jurisdiction. *See Civil Service Reform Oversight, 1980— Whistleblower* at 16, 23, 50 (criticism of OSC for long delays and lack of communication with victims of reprisals). So far as we can tell from the record, petitioner's case was never investigated, as the statute requires. Moreover, OSC's belated reasons for termination of the investigation were apparently based upon an inapplicable provision of the statute, and thus were erroneous in law.

 The plain language of the statute and the legislative history clearly indicate that while the scope of an initial OSC investigation need only be extensive enough to determine whether there are reasonable grounds to believe a prohibited personnel practice is occurring, has occurred, or will occur, "[s]ome preliminary inquiry will . . . be necessary . . . to determine whether a charge warrants a thorough inquiry." II Legislative History 1496. Further, although the legislative history indicates that the statement of reasons for termination of the OSC's investigation need not be "detailed" and that the OSC has discretion to decide what form notice should take, it is equally clear that "a brief notification of the summary reasons for the termination" is required. II Legislative History 1976; *see also* 5 C.F.R. § 1251.4 (closing cases and terminating investigations). Informing petitioner a year after closing the investigation that her case was more appropriately resolved elsewhere, particularly *after the MSPB had held that it had no jurisdiction over her appeal*, did not, in our view, conform to the statutory mandate. Although the OSC may routinely defer action on a prohibited personnel practice when a mat-

ter is *pending* before the MSPB, 5 C.F.R. § 1251.2, that was not the situation here when the OSC issued a statement of reasons. Further, the OSC's reason for termination, *i.e.*, the availability of other processes, erroneously relied upon a provision of the statute, 5 U.S.C. § 1206(e)(2), which is inapplicable to petitioner's case. That provision states that "no investigation" is allowed, if more appropriate avenues of relief are available, of allegations involving

> (D) activities prohibited by any civil service law, or regulation, including any activity relating to political intrusion in personnel decisionmaking; and

> (E) involvement by any employee in any prohibited discrimination found by any court or appropriate administrative authority to have occurred in the course of any personnel action.

It is apparent from our reading of the statute and the legislative history that section 1206(e)(2) was an additional grant of authority to the OSC to investigate practices which would not come within its section 1206(a) prohibited personnel practice jurisdiction. Thus, we disagree with the government's argument that the OSC's response in this case was justified under 5 U.S.C. § 1206(e). *See* Respondent's Brief at 19. The authority vested in the OSC under that "special" situation provision is "[i]n addition to" the OSC's primary authority *and responsibility* to investigate and to seek correction of prohibited personnel practices, such as whistleblowing. 5 U.S.C. §§ 1296(a) and 2302(b); *see also* H.R.Rep. No. 1403, 95th Cong., 2d Sess. at 20 (1978) ("The new section 1206(e) authorizes the Special Counsel to investigate allegations of the Hatch Act and *certain other special matters.*") (emphasis added). This additional authority in no way detracts from the OSC's duty under section 1206(a). Indeed, we find nothing in the statute to qualify the OSC's authority and responsibility to investigate an employee's allegation of retaliation for whistleblowing at least to the extent of ascertaining if that complaint is meritorious.

## V. DISPOSITION

The case is here on review of the MSPB's order dismissing a probationary employee's appeal for lack of jurisdiction. The petitioner understandably wants some remedy for the OSC's failure to perform its statutory duty to initiate some kind of inquiry into the merits of an allegation of retaliation for whistleblowing.[7] As we see it, this is a non-discretionary aspect of the OSC's statutory responsibility. Seemingly, then, there should be a remedy for petitioner where the OSC has failed to perform even that initial inquiry into the whistleblowing allegation, and its reasons for inaction are legally invalid. However, the proper remedy for the OSC's failure cannot be an appendage to this appeal from a legally correct decision of the Board that it had no jurisdiction to consider petitioner's appeal from her job termination.

We remain troubled, however. In enacting the CSRA, Congress sought to create an efficient system for protecting *all* employees from reprisals for whistleblowing.[8] The only remedy available under the CSRA for a probationary employee alleging a dismissal in reprisal for whistleblowing is OSC oversight. By failing to investigate petitioner's complaint and to issue a valid statement of reasons for termination, the OSC has not fulfilled its charge and has thereby cast doubt upon the efficacy of a new and promising statutory system for protecting whistleblowers.

It is possible—although obviously we do not decide the point—that petitioner may have an action for mandamus in the district court to compel some form of inquiry into the merits.[9] Quicker still would be a voluntary reopening of Wren's case by the OSC

7. This does not present us with the question reserved in *Frazier*, 672 F.2d at 162 n.41, *i.e.*, whether the OSC's decision not to bring a corrective action before the MSPB is judicially reviewable.

8. The continuing need for this system and OSC protection was reaffirmed by the 1981 report of the U.S. Merit Systems Protection Board, *Whistleblowing and the Federal Employee* 3–5 (1981):

> Approximately 45% of the employees surveyed claimed to have observed one or more instances of illegal or wasteful activity during the previous 12 months.
>
> . . . .
>
> Seventy percent of those employees who claimed to have personal knowledge of some type of fraud, waste, or mismanagement did *not* report the misconduct.
>
> . . . .
>
> Less than one out of every five employees (19%) who had direct knowledge of fraud, waste, or mismanagement and chose not to report it gave fear of reprisal as a reason.
>
> . . . .
>
> Over a third of the identified reporters believed that reporting the incident resulted in some form of "negative experience" for them.
>
> . . . .
>
> The most frequently cited forms of reprisal were more subjective, discretionary actions, such as poor performance appraisal, assignment of less desirable or less important duties, and denial of promotion.

9. Despite substantial precedent to the effect that federal mandamus does not ordinarily lie under 28 U.S.C. § 1361 to compel prosecutions or even investigations, *see Inmates of Attica v. Rockefeller*, 477 F.2d 375 (2d Cir. 1973); *Peek v. Mitchell*, 419 F.2d 575 (6th Cir. 1970); *Moses v. Kennedy*, 219 F.Supp. 762 (D.C.Cir.1963), we believe that a strong case can be made that by enacting the CSRA Congress intended to afford a whistleblower the right to have a complaint of retaliation investigated to the extent necessary to determine whether there were reasonable grounds for the allegation, *i.e.*, we believe that the OSC does not have totally unreviewable discretion to refuse to look at the complaint altogether or to refuse to look at it for reasons unauthorized by the statute. We know that Congress obviously meant the OSC to have authority to dismiss claims which are groundless and frivolous on their face, and that it intended that the OSC develop a systematic means of screening employee complaints to weed out the unmeritorious ones. It is also quite clear from the statutory language and corresponding legislative history that Congress did not mean to make the OSC's decisions to terminate or conduct an investigation or bring a proceeding before the Board reviewable on the merits. *See Senate Comm. on Governmental Affairs, 95th Cong., 2d Sess., Markup Session on S. 2640, Civil Service Reform Act of 1978* at 85–86 (unpublished transcript May 22, 1978); *House Comm. on Post Office and Civil Service, 95th Cong., 2d Sess., Markup Meetings on H.R. 11280, A Bill to Reform the Civil Service Laws* at 46–47 (Comm. Print 1978). But we cannot so easily conclude that Congress meant to provide no means to enforce the OSC's failure to perform a ministerial duty, *i.e.*, to investigate or to screen to some degree employee complaints which allege prohibited personnel

in order to conduct whatever inquiry is necessary to determine whether her allegation of retaliatory discharge for whistleblowing is meritorious.

For the foregoing reasons, the petition is *denied.*

*So ordered.*

practices. The CSRA contains an unequivocal statutory mandate, incorporated into the OSC's own regulations, which states:

> The Special Counsel is required to receive and to investigate allegations of prohibited personnel practices ....

5 C.F.R. § 1250.2(a). It would be difficult to square unreviewable refusal to investigate with the strong language found in the legislative history. *See, e.g.,* I Legislative History 643 ("The Office of Special Counsel ... is a new position designed to ensure that employees are fairly protected.); *id.* at 1130 ("The bill ... provide[s] for mandated investigations where the Special Counsel determines that the charges raised by the employee have a significant likelihood of validity."); II *id.* at 1486 ("Whether the disciplinary action is a result of the individual's performance on the job, or whether it is a reprisal because the employee chose to criticize the agency, is a matter for judgment to be determined ... ultimately by the Special Counsel ...."); *id.* at 1633 (The CSRA "addressed a long-standing deficiency in the civil service laws: that patriotic employees who bring examples of official wrongdoing to the public's attention have, in the past, enjoyed no meaningful protection against reprisals by their supervisors."); *id.* at 1680 ("Unfortunately, those who ... have been punished for their whistleblowing, clearly points [sic] to the need for a separate, independent agency to receive and process these allegations in a safe, confidential, and in a[n] expeditious manner.").

Although several district courts have ruled that a private right of action does not lie under § 2302 to enforce a whistleblower's protections against retaliation, *Apodaca v. United States Government Printing Office,* No. 80–2978 (D.C.C. Sept. 16, 1981); *Brawner v. United States Department of the Navy,* No. 80–3195 (D.D.C. April 27, 1981); *Cutts v. Ferris,* No. 80–1992 (D.D.C. July 29, 1981); *Dearsman v. Kurtz,* 516 F.Supp. 1255 (D.D.C.1981); *Scarangella v. Schweiker,* No. 81–0744 (D.D.C. Aug. 7, 1981), those cases did not involve the limited request here, *i.e.,* that the OSC investigate the complaint to determine whether it was meritorious.