Joseph A. TOWERS, Plaintiff-Appellee,

v.

Constance HORNER, Director, Office of Personnel Management of the United States, and J.K. Bratton, Chief of Engineers of the United States Army, Defendants-Appellants.

Joseph A. TOWERS, Plaintiff-Appellant,

v.

Constance HORNER, etc., et al., Defendants-Appellees.

Nos. 85–3001, 85–3172.

United States Court of Appeals, Fifth Circuit.

June 18, 1986.

John S. Koppel, William Kanter, Justice Dept., Deborah Ruth Kant, Washington, D.C., for defendants-appellants.

Keith Vetter, New Orleans, La., for plaintiff-appellee.

Alfred F. Belcuore, Washington, D.C., Malcom W. Monroe, New Orleans, La., for amicus curiae.

Before WISDOM, RUBIN, and HIGGIN-BOTHAM, Circuit Judges.

WISDOM, Circuit Judge:

Joseph Towers, a civilian attorney employed by the Army Corps of Engineers, seeks judicial review of the government's decision not to reclassify his position of employment. We conclude that the Civil Service Reform Act of 1978 permits review of the decision only through the Office of Special Counsel of the Merit Systems Protection Board.

## I.

Towers served as district counsel to the New Orleans District of the United States Army Corps of Engineers since December 1965. In 1968 Towers asked the Civil Service Commission to review his job classification. The Commission conducted a review and reclassified Tower's position from GS–13 to GS–14.[1]

In September 1980 Towers asked the Office of Personnel Management, one of the Commission's successors, to raise his classification to GS–15. Under the applicable classification standards, government attorneys are classified GS–15 if they regularly accept the highest level of responsibility ("Level E") for the most difficult and important cases ("Type III").[2] The OPM regional office in Dallas concluded that Towers's responsibilities are at Level E, but that he typically handles less significant "Type II" cases. OPM headquarters reviewed the decision of the Dallas office and concluded that Towers's work is of "Type III" difficulty and importance, but that his responsibilities rise only to Level D. OPM

therefore decided that Towers's job is properly classified at the GS–14 level.

Towers then brought this action in the district court, seeking a writ of mandamus and review of the OPM decision under the Administrative Procedure Act. The district court concluded that the decision not to classify Towers's position as GS–15 was arbitrary and capricious. The government appeals from the judgment for Towers. Towers appeals from an order denying attorney's fees under the Equal Access to Justice Act.

## II.

The Civil Service Reform Act of 1978 (CSRA)[3] enacted the first comprehensive reform of the civil service system since the Pendleton Act of 1883. Congress concluded that no single agency should have responsibility "for both the management of the civil service system and adjudication of complaints against the way the system is implemented".[4] The CSRA therefore replaced the Civil Service Commission with three new agencies: the Office of Personnel Management (OPM), the Merit Systems Protection Board (MSPB), and the Office of Special Counsel (OSC). The OPM is charged with "leadership ... functions in the field of personnel administration [formerly] assigned to the [Civil Service] Commission but more properly the function of the Chief Executive."[5] The MSPB adjudicates claims that agencies have violated merit system principles.[6] The three members of the MSPB, "not more than 2 of whom may be adherents of the same political party", are appointed with the advice and consent of the Senate.[7] The OSC is

---

1. GS–13 and GS–14 are two of the eighteen gradations of difficulty and responsibility established by the "General Schedule". 5 U.S.C. § 5104.

2. United States Civil Service Commission, Position Classification Standards, General Attorney Series, GS–905–0 (as amended May 1974).

3. Pub.L. No. 95–454, 92 Stat. 1111 (codified as amended in scattered sections of Title 5 of the U.S.Code).

4. 124 Cong.Rec. S14,268 (statement of Sen. Ribicoff), *reprinted in* House Comm. on Post Office and Civil Service, 96th Cong., 1st Sess., Legislative History of the Civil Service Reform Act of 1978, at 1608 (Comm.Print 1979) ("Legislative History").

5. 124 Cong.Rec. S14,278 (statement of Sen. Sasser), *reprinted in* Legislative History at 1629.

6. 5 U.S.C. § 1205.

7. *Id.* § 1201.

responsible for investigating complaints and petitioning the MSPB for "corrective action".[8] The OSC is modelled after the General Counsel of the National Labor Relations Board.[9]

The CSRA sets out a detailed enforcement scheme. The Act defines a category of "adverse actions" [10] which the employee may appeal of right to MSPB, and from the MSPB to the Court of Appeals for the Federal Circuit or the Claims Court.[11] The Act also defines a category of "prohibited personnel practices".[12] The OSC is required to investigate complaints that agencies have engaged in prohibited personnel practices. If the OSC determines that the complaint has merit, it may petition the MSPB for "corrective action".[13] The Act does not provide for judicial review of the OSC's decision not to petition the MSPB.[14]

In *Broadway v. Block*, this Court held that a reassignment without reduction in grade or pay is not subject to judicial review absent a decision by the MSPB.[15] We concluded that:

> Congress did not neglect expressly to create a judicial remedy where it wanted one to exist. In balancing conflicting needs for efficiency and employee protection, it chose to make certain severe personnel actions, namely "adverse actions," subject to judicial review, while leaving other "personnel actions," including reassignments, to administrative discretion.[16]

Other courts confronted with a variety of personnel actions have reached the same conclusion.[17] These courts reason that "the exhaustive remedial scheme of the CSRA would be impermissibly frustrated by permitting, for lesser personnel actions not involving constitutional claims, an access to the courts more immediate and direct than the statute provides with regard to major adverse actions".[18] There is nothing wrong with that.

### III.

The plaintiff and the Federal Bar Association [19] contend that *Broadway* does not control this case because classification decisions, unlike reassignments, are beyond the scope of the CSRA.

The Civil Service Commission was authorized to establish classification standards and to monitor agency compliance with those standards by the Classification Act of 1949.[20] Before Congress enacted CSRA, courts routinely reviewed classification decisions, as well as other personnel actions that did not rise to the level of "adverse

---

**8.** *Id.* § 1206.

**9.** Civil Service Reform: Hearings on H.R. 11280 Before the House Comm. on Post Office and Civil Service, 95th Cong., 2d Sess. 820 (1978) (memorandum from Office of Legal Counsel, U.S. Dept. of Justice), U.S.Code Cong. & Admin. News 1978, p. 2723.

**10.** Adverse actions include removal, suspension for more than fourteen days, reduction in pay or grade, and a furlough of thirty days or less. 5 U.S.C. §§ 7512, 7513(d), 4303(e).

**11.** *Id.* §§ 7701, 7703.

**12.** *Id.* § 2302.

**13.** *Id.* § 1206. The OSC may also negotiate directly with the agency.

**14.** The District of Columbia Circuit has held that, if the OSC recommends that MSPB take corrective action, the MSPB's order is reviewable in the court of appeals. *Frazier v. Merit Systems Protection Board,* 672 F.2d 150 (D.C.Cir. 1982). That circuit has further concluded that the employee may be able to obtain judicial review of the OSC's decision not to pursue a complaint limited to whether the OSC discharged its duty to investigate the complaint. *Wren v. Merit Systems Protection Board,* 681 F.2d 867, 875 n. 9 (D.C.Cir.1982).

**15.** 694 F.2d 979 (5th Cir.1982).

**16.** 694 F.2d at 984.

**17.** *Weatherford v. Dole,* 763 F.2d 392 (10th Cir. 1985) (reassignment); *Pinar v. Dole,* 747 F.2d 899 (4th Cir.1984) *cert. denied,* ——— U.S. ———, 105 S.Ct. 2019, 85 L.Ed.2d 301 (1985) (adverse action); *Veit v. Heckler,* 746 F.2d 508 (9th Cir. 1984) (denial of merit pay); *Carducci v. Regan,* 714 F.2d 171 (D.C.Cir.1983) (reassignment).

**18.** *Carducci v. Regan,* 714 F.2d at 174.

**19.** The Federal Bar Association appears in this case as *amicus curiae.*

**20.** 5 U.S.C. §§ 5105, 5110(a).

actions".[21] The CSRA did not amend the Classification Act except to substitute the words "Office of Personnel Management" for the words "Civil Service Commission".[22] The plaintiff argues that classification decisions are not subject to review by the MSPB and therefore should continue to be reviewed directly by the courts.

We conclude that Congress did not intend to deprive the MSPB of authority to adjudicate classification disputes. To deny that authority to the MSPB would undermine the fundamental principle embodied in the CSRA, that management of the civil service system should be separated from adjudication of disputes arising under that system. We find no indication in the legislative history that Congress intended to treat classification disputes differently. On the contrary, Congress was aware that OPM has "a vested interest in keeping grades down".[23]

We further conclude that CSRA provides a means by which federal employees may obtain limited review of OPM classification decisions: employees may ask the OSC to investigate classifications on the grounds that they are prohibited personnel practices. A prohibited personnel practice is defined as (i) any personnel action that (ii) violates a law, rule, or regulation, if (iii) the violated law, rule or regulation "implements" or "directly concerns" merit system

principles.[24] The CSRA defines "personnel action" to include "a decision concerning pay".[25] A classification decision indisputably concerns pay.[26] Classification decisions are based on the provisions of Chapter 51 of Title 5. The merit system principles include protection against arbitrary action and equal pay for work of equal value.[27] Classification decisions indisputably concern those principles.

We hold that classification decisions are within the scope of CSRA, and therefore are subject to its remedial provisions. Review is not available under the APA because the "agency action is committed to agency discretion by law".[28] Mandamus is not available because Towers has an adequate alternative remedy.[29] The Court of Appeals for the District of Columbia Circuit recently reached the same result.[30]

## IV.

Towers's complaint alleges a violation of his Fifth Amendment rights. "Where newly enacted statutory remedies are unavailable to a particular segment of employees, the Supreme Court appears to have imposed a kind of 'clear statement' requirement on Congress, requiring it to indicate explicitly its intent to displace judicially-created remedies for constitutional depriva-

---

**21.** *See United States v. Testan,* 424 U.S. 392, 403, 96 S.Ct. 948, 955, 47 L.Ed.2d 114 (1976).

**22.** Technical and Conforming Amendments to Pub.L. No. 95–454, 92 Stat. 1226 (amending 5 U.S.C. § 5112).

**23.** 124 Cong.Rec. H8468 (1978) (statement of Rep. Ford), *reprinted in* Legislative History at 815.

**24.** 5 U.S.C. §§ 2302(a)(1), 2302(b)(11); *Wells v. Harris,* 1 MSPB 199, 204, 1 MSPR 208, 215 (1979).

**25.** 5 U.S.C. § 2302(a)(2)(A)(ix).

**26.** *See id.* § 5101.

**27.** *Id.* §§ 2301(b)(8)(A), 2301(b)(3).

**28.** 5 U.S.C. § 701.

**29.** Because the statute requires the OSC to investigate alleged unfair personnel practices, the employee may be entitled to mandamus if the OSC refuses to conduct an investigation. *See Wren v. Merit Systems Protection Board,* 681 F.2d at 875 n. 9.

**30.** *National Treasury Employees Union v. Egger,* 783 F.2d 1114 (D.C.Cir.1986) (review under APA not available); *Barnhart v. Devine,* 771 F.2d 1515, 1519–23 (D.C.Cir.1985) (mandamus not available). The Ninth Circuit reached the opposite result in *Burroughs v. Office of Personnel Management,* 764 F.2d 1300 (9th Cir.1985). In its denial of the petition for rehearing en banc, however, the *Burroughs* court noted that the government initially conceded that the district court had jurisdiction to review the decision of the OPM. The court emphasized that the issues decided in *Barnhart* remain open in the Ninth Circuit.

tions."[31] In this case, however, Towers did not press his constitutional claim before the district court and the district court did not dispose of it. The only fact alleged in support of the claim is the promotion of certain non-attorneys employed by the Corps of Engineers in the New Orleans District from GS–14 to GS–15. Because the facts alleged in the complaint do not make out an equal protection violation, we see no purpose in remanding this case for determination of Towers's constitutional claim.

Towers is not a prevailing party within the meaning of the Equal Access to Justice Act.[32] He therefore may not recover attorney's fees under that Act.

The judgment of the district court is REVERSED and judgment is RENDERED for the defendants.

31. *Borrell v. United States International Communications Agency,* 682 F.2d 981, 989 (D.C.Cir. 1982).

