934 F.2d 1240
 55 Fair Empl.Prac.Cas. 1675,
57 Empl. Prac. Dec. P 40,952
Julio M. CRUZ, Petitioner,
v.
DEPARTMENT OF the NAVY, Respondent.
 No. 89-3359.
 United States Court of Appeals,
Federal Circuit.
 April 30, 1991.[1]
 
 Phillip R. Kete, of Takoma Park, Md., submitted for petitioner.
 Russell B. Kinner, of the Commercial Litigation Branch, Dept. of Justice, Washington, D.C., submitted for respondent. With him on the brief were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, and Thomas W. Peterson. Of counsel was Kenneth J. Densmore, Office of the Gen. Counsel, Dept. of the Navy.
 Before NIES, Chief Judge, RICH, Circuit Judge, SKELTON, Senior Circuit Judge, and MARKEY, NEWMAN, ARCHER, MAYER, MICHEL, PLAGER, LOURIE, CLEVENGER, and RADER, Circuit Judges.
 MARKEY, Circuit Judge.
 
 DECISION
 
 1
 Julio M. Cruz (Cruz) appeals from a Merit Systems Protection Board (Board) order granting the Navy's motion to dismiss his appeal. We affirm.
 
 BACKGROUND
 
 2
 Cruz was employed as an Education Services Specialist by the Navy. On January 29, 1988, the Navy sent him a Notice of Proposed Removal. The Notice included 14 paragraphs listing specific instances of insubordination and unsatisfactory performance of a critical performance standard occurring between 23 September and 7 December, 1987. The Notice set forth Cruz' right to reply orally and in writing, tendered time off to prepare a reply, noted that it was only a proposal, and said the proposed removal action, "if found warranted", would not be taken before 30 days had passed and Cruz had received a final decision letter.
 
 
 3
 On February 9, 1988 Cruz filed a rebuttal in which he discussed the listed acts of insubordination, denying some, admitting some, and giving his reasons for some.
 
 
 4
 On February 16, 1988, Cruz resigned "effective March 1, 1988."
 
 
 5
 On February 22, 1988, a Navy Employee Relations Specialist sent a memo to Cruz, advising that whenever there is any indication that a resignation may have been submitted involuntarily (Cruz' resignation had referred to "duress"), the Navy's policy was to permit withdrawal. The memo urged withdrawal, pointing out that Cruz' personnel records would otherwise reflect that he had resigned on receipt of a removal proposal and referring to Cruz' appeal rights if he withdrew his resignation and an adverse action were taken.
 
 
 6
 On February 23, Cruz responded with a memo in which he reaffirmed his resignation as of March 1, 1988 and requested that a final decision be rendered on the proposal to remove. Cruz expressed concern for the effect on future employment of an indication on his records that he resigned because his "removal for cause was imminent". If the final decision should result in an adverse action, Cruz said he would appeal to the Board. Cruz wrote "Should no adverse action be rendered then I request that my personnel records reflect an unconditional resignation".
 
 
 7
 In a phone call of February 26 and a confirming memo of February 29, the Navy personnel specialist again informed Cruz that his resignation precluded issuance of a final decision and again reminded Cruz of his option to retract his resignation and receive a final decision. Cruz instructed the personnel specialist to proceed with the processing of his resignation. The Navy did so, separating Cruz by reason of his resignation effective 1 March 1988.
 
 
 8
 On July 28, 1988, Cruz appealed to the Board and the AJ granted a hearing. The Navy moved to dismiss for lack of jurisdiction. On November 25, 1988, after a hearing, the Administrative Judge (AJ) found: the Navy had reasonable grounds for proposing Cruz' removal; the Navy firmly believed the charges would be substantiated; far from suggesting or imposing any terms on Cruz' resignation, the Navy twice invited him to withdraw it; Cruz' decision to resign, rather than contest a removal, was not coerced or caused by Navy deception or by any improper act or omission of any Naval person; there were reasonable grounds for charging that Cruz was insubordinate and disrespectful on numerous occasions, repeatedly confronting his supervisor on matters of her authority and refusing to comply with her directives and guidance; without permission or authority, Cruz tried to get a private citizen discharged as a campus representative; and the Commanding Officer of the Naval Air Station requested Cruz' commanding officer to replace Cruz in view of documented complaints from persons outside the chain of command. The AJ rejected Cruz' allegation that the reason the agency filed the charges was that it was acting in reprisal for his EEO complaints, finding that his removal was proposed for appropriate, identified reasons and that Cruz had failed to establish a causal connection between his EEO complaints and the proposal to remove him.
 
 
 9
 Cruz petitioned the Board for review, contending that (1) the Navy committed harmful procedural errors; (2) the AJ was biased; (3) the AJ erred in finding no coercion; and (4) the AJ erred in finding that the agency's proposal to remove him was not made in reprisal for his filing EEO complaints. The Board denied the petition for failure to meet the criteria for review, 40 M.S.P.R. 683, and went on to hold that: (a) there was no basis for review of contention (1) because Cruz failed to establish that his resignation constituted an appealable action; (b) there was no evidence of bias; (c) the AJ did not err in finding lack of coercion; and (d) the AJ should not have reached Cruz' reprisal assertion made in connection with his proposed removal because 5 U.S.C. Sec. 2302(b) (making reprisal a prohibited personnel practice) is not an independent source of Board jurisdiction. The Board pointed out that an employee must establish subject matter jurisdiction before the Board may review claims based on such practices, citing Wren v. Department of the Army, 2 MSPB 174, 2 M.S.P.R. 1, 2 (1980) aff'd sub nom. Wren v. Merit Systems Protection Board, 681 F.2d 867, 871-73 (D.C.Cir.1982). The Board then distinguished its action in Durden v. Department of the Navy, 18 M.S.P.R. 373, 376 (1983), where it found Durden's retirement involuntary because handicap discrimination was the sole reason for a threatened removal, and was intertwined with the Board's jurisdiction, i.e., with voluntariness of Durden's resignation. The Board said that reprisal, even if true, could not have been the sole reason here in light of the reasons residing in the AJ's findings that Cruz was disobedient, disrespectful, and insubordinate. Finding that the appeal is not a mixed case, the Board agreed with the AJ that Cruz was therefore not entitled to appeal to the EEOC and a District Court. Accordingly, the Board let stand the AJ's dismissal, vacating only that part of the AJ's decision relating to Cruz' assertion that reprisal was the reason charges were filed.
 
 ISSUE
 
 10
 Whether the Board lacked jurisdiction over Cruz' appeal.
 
 I. Procedural History in This Court
 
 11
 In the now vacated opinion, the panel majority described this as a "mixed case", which it defined as "one involving an appealable action and a discrimination issue". Citing Williams v. Department of the Army, 715 F.2d 1485 (Fed.Cir.1983), and 5 U.S.C. Sec. 7702, and expressing concern that Cruz might otherwise be denied court review of his "discrimination claim", the panel would have remanded the case to the Board with instructions to decide "the discrimination issue". Though the panel said it "reversed" the Board, it did not specify the nature of or describe the "appealable action" it thought present and it did not challenge the Board's finding that Cruz' resignation was not the result of coercion, deception or the like. Nor did the panel discuss the question of whether, once it found Cruz' February 16, 1988 resignation voluntary, and that there was thus no appealable action over which it had jurisdiction, the Board had jurisdiction to proceed further to decide a claim not within its assigned jurisdiction.
 
 
 12
 This court accepted the Navy's suggestion for in banc consideration of this question:
 
 
 13
 Whether an allegation of title VII discrimination presented by a former employee expands the jurisdiction of the Merit Systems Protection Board to decide that discrimination issue where the board had already determined that it lacked jurisdiction under 5 U.S.C. Sec. 7512 because the former employee had resigned voluntarily.
 
 
 14
 We here answer that question in the negative.
 
 II. Underlying Facts
 
 15
 As will be clear from what follows, we hold that the Board's decision denying jurisdiction was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. Sec. 7703(c). With respect to the underlying facts, we agree with the Board that: (1) the Navy established reasonable grounds for proposing Cruz' removal; (2) the Navy firmly believed the charges would be substantiated; (3) the Navy imposed no terms on Cruz' resignation, made no misrepresentations, and twice invited a retraction that would have preserved Cruz' appeal rights; (4) Cruz was insubordinate, disobedient, and disrespectful; (5) Cruz' resignation was not coerced; and (6) Cruz' assertions of bias and denial of due process are without merit.
 
 III. Jurisdiction
 
 16
 As the AJ and the Board recognized, the sole issue in this case is whether the Board had jurisdiction over Cruz' appeal to it.
 
 
 17
 The Board has only that jurisdiction conferred on it by Congress. Thomas v. United States, 709 F.2d 48, 49 (Fed.Cir.1983). The Board's limited jurisdiction as here applicable is set by a statute, 5 U.S.C. Sec. 7512[2], which grants the Board jurisdiction to hear and determine challenges to specific adverse actions of agencies, including removals and four other adverse actions not here involved.[3] The sole agency action in this case is its January 28, 1988 notification to Cruz of its tentative proposal to remove him on charges specifying numerous acts of insubordination and unacceptable performance of one critical element of his position. It is that proposal, Cruz argues, that was tainted by reprisal. Because mere proposals to remove are not listed in Sec. 7512, they are not appealable adverse actions in themselves and the Board has no jurisdiction over them. Rose v. Department of Health and Human Services, 721 F.2d 355, 356 (Fed.Cir.1983).
 
 
 18
 If Cruz had withdrawn his resignation and allowed his rebuttal of February 9, 1988 to stand, and if the agency procedures thus triggered had resulted in his removal, the Board would have had jurisdiction over any appeal he might have filed from that appealable adverse agency action. In that event 5 U.S.C. Sec. 7702[4] would have come into play and required the Board to decide the merits of the removal action and any discrimination issue Cruz might have presented; but Sec. 7702 merely describes what the Board must do when it has jurisdiction; it is not a grant of jurisdiction. Moreover to apply Sec. 7702 to a case in which there is no appealable action is to re-write the statute by deleting its subsection (a)(1)(A).
 
 
 19
 Cruz' February 16, 1988 letter announcing his resignation effective March 1, 1988, and his disregard of two written warnings that failure to withdraw his resignation would forfeit his appeal rights, forestalled all agency procedures and resulted in the agency's taking no action at all, much less an appealable action, on the proposed removal. There being no appealable action, the Board was without jurisdiction and there was nothing with which Cruz' reprisal assertion could be "mixed".
 
 
 20
 It is undisputed that the Board lacks jurisdiction to hear and determine an appeal from an employee who has voluntarily resigned. The courts, however, have recognized a corollary proposition, i.e., that the Board does have jurisdiction to hear and determine an appeal by an employee whose resignation was not voluntary, an involuntary resignation being deemed a "constructive removal". The Board has jurisdiction to determine whether a resignation was voluntary or involuntary because it has jurisdiction to determine its jurisdiction, as do its AJ's. A resignation is either voluntary or involuntary on the date it is submitted and jurisdiction must be determined as of that date. Cruz, who has the burden of establishing jurisdiction, alleged before the Board that his resignation was involuntary because the agency knew that the charges it cited as the basis for proposing his removal could not be substantiated. That allegation was correctly found to be without merit.
 
 
 21
 Resignations are presumed voluntary, Christie v. United States, 518 F.2d 584, 587, 207 Ct.Cl. 333 (1975), and Cruz has submitted no evidence overcoming that presumption or indicating that his resignation was involuntary. On the contrary, the record establishes a textbook example of a voluntary resignation submitted in the face of serious charges.
 
 IV. Effect of the Reprisal Claim
 
 22
 In his petition for Board review, Cruz recognized that his reprisal claim rested on the absence of reasonable grounds for proposing his removal:
 
 
 23
 In the absence of sustainable charges and substantive documentation, and in the presence of so many procedural violations, it can only be concluded that there was another reason for the agency's actions; and that reason is my prior EEO involvement.
 
 
 24
 The opposite of Cruz' scenario is present here, where there was strong evidence that the charges constituted good cause, there was substantive documentation, and his resignation precluded all procedures on the proposal. We repeat that the only agency action here was the notification of intent to remove in view of serious charges. The AJ found and the Board affirmed the finding that the Navy fully believed the charges would be sustained. Under such objective circumstances the Navy would have been remiss if it had condoned Cruz' conduct by failing to bring the charges it brought. In cases properly before this court, i.e., those not involving discrimination, the Board's jurisdiction over an allegedly involuntary resignation has been determined by an evaluation of objective facts without exploration of the subjective motivation of either the employee or the agency. Indeed, this court's evenhanded approach has been to ignore assertions of allegedly evil agency motives in finding resignations voluntary, and to ignore allegedly proper motives in finding resignations involuntary. See Christie, 518 F.2d at 587; Scharf v. Dept. of the Air Force, 710 F.2d 1572, 1575 (Fed.Cir.1983); Covington v. Department of Health and Human Services, 750 F.2d 937, 942 (Fed.Cir.1984). To look to motive in this case would thus be contrary to clear precedent.
 
 
 25
 It must be remembered that the asserted act of reprisal here is the Navy's bringing of the charges. The sole issue here is the Board's jurisdiction, and that issue resolves into whether Cruz' resignation was voluntary or involuntary because obtained by coercion, deception or the like. All evidence of involuntariness must be considered, but the reprisal assertion, if the Board had independent jurisdiction over it, would be subsumed by the findings of no coercion, or deception, or other improper agency act.[5] Though we obviously do not here decide whether reprisal may or may not have been among the motives of Cruz' supervisors, we cannot hold that the bringing of numerous, valid, serious and sustainable charges of conduct that destroys the efficiency of the service constitutes coercion to resign. To so hold would be contrary to precedent and to common sense. This court has repeatedly held that the imminence of a less desirable alternative does not render involuntary the choice made. Sammt v. United States, 780 F.2d 31, 32 (Fed.Cir.1985); Schultz v. United States Navy, 810 F.2d 1133, 1136 (Fed.Cir.1987); Griessenauer v. Department of Energy, 754 F.2d 361, 364 (Fed.Cir.1985); Covington v. Department of Health and Human Services, 750 F.2d 937, 942 (Fed.Cir.1984) (dicta); Taylor v. United States, 591 F.2d 688, 692, 219 Ct.Cl. 86 (1979); Christie v. United States, 518 F.2d 584, 587-88, 207 Ct.Cl. 333 (1975).
 
 
 26
 Cruz' primary assertion in his appeal here is that the Board should have decided his reprisal claim and notified him of a right to appeal that decision to the EEOC or a district court because the agency's January 29, 1988 letter was in reprisal for filing his 1987 EEOC complaint.[6] But that mere assertion does not provide a basis for Board jurisdiction in this voluntary resignation case. First, a petitioner's mere assertion cannot create jurisdiction. Second, as above indicated, bringing charges, for whatever reason, is not in itself an agency action appealable to the Board. Nor are discriminatory acts in themselves agency actions appealable to the Board. A statute, 5 U.S.C. Sec. 2302(b), makes reprisal a prohibited personnel practice, but that statute is not an independent source of Board jurisdiction. Wren v. Merit Systems Protection Board, 681 F.2d 867, 871-73 (D.C.Cir.1982).
 
 
 27
 Nor would a source of jurisdiction be created by accepting, arguendo, Cruz' label for his reprisal assertion: "Title VII claim of discrimination". The Board has not been granted jurisdiction over Title VII claims per se, i.e., over "pure" or "naked" Title VII claims unaccompanied by an appealable action over which the Board does have jurisdiction. Cruz on this appeal attempts to convert his attempted appeal under Title 5, U.S.C. to a suit for discrimination under Title VII of the Civil Rights Act. As above indicated, when discrimination is asserted in an appeal from a removal or other appealable adverse agency action over which the Board has jurisdiction, the case is a "mixed case" and the Board must decide the merits of the appealable action and whether it was a discriminatory act. 5 U.S.C. Sec. 7702. In such cases, the Board routinely notifies appellants of a right to EEOC review. Where, as here, it has been found that there never was an appealable adverse agency action, the case is not a "mixed case", Sec. 7702 is not involved, and the Board correctly determined that it was without jurisdiction to consider Cruz' claim of procedural error or his reprisal assertion, or any other claim beyond the Board's jurisdiction. That holding and our affirmance break no new ground. See Manning v. Merit Systems Protection Board, 742 F.2d 1424 (Fed.Cir.1984) (jurisdiction lacking over reassignment, no jurisdiction to consider allegation reassignment was in reprisal for exercise of First Amendment rights); Synan v. Merit Systems Protection Board, 765 F.2d 1099, 1101 (Fed.Cir.1985) (rejecting reliance on Sec. 7702 because suspension was not an appealable action and refusing to transfer discrimination claims to district court where Board lacked jurisdiction over suspension of 14 days or less: "Reliance on Sec. 7702(a)(1) is of no help to petitioner either, because the discrimination-based action must be one that is appealable."); Sammt v. United States, 780 F.2d 31 (Fed.Cir.1985); and Wren, supra. For the same reason, the Board correctly declined to refer to any right of EEOC review and Cruz' motion for transfer of this case to a district court must be denied.
 
 
 28
 In Wren v. Merit Systems Protection Board, 681 F.2d 867 (D.C.Cir.1982), a case in which the agency action was a removal, Wren, a probationary employee, was removed for unsatisfactory performance, uncooperativeness, and failure to attend performance seminars. She appealed to the Board and also sought an investigation by the Office of Special Counsel (OSC) of her assertions of reprisal for her alleged "whistle blowing". Her appeal to the Board was based on her claim that her removal was in reprisal for the same "whistle blowing". The Board dismissed for lack of jurisdiction over appeals filed by probationary employees removed during the probation period. Wren appealed the Board's dismissal to the court, but argued that the court should remand with instructions that the Board order OSC to complete an investigation of Wren's reprisal assertions. Though it criticized OSC's apparent failure to perform its statutory duty, the court affirmed the dismissal. Circuit Judge, later Chief Judge, Wald stated:
 
 
 29
 The only matter properly before this court is the Board's decision that it had no jurisdiction over Wren's appeal from the Army's adverse personnel action. We find that decision a correct one. Accordingly, we must affirm the decision of the Board.
 
 
 30
 681 F.2d at 869.
 
 
 31
 Therefore, if the OSC fails to perform its statutory duties, as here, relief--if it lies at all--must be sought in a separate action in the district court to compel the OSC to perform its statutory duties.
 
 
 32
 681 F.2d at 872.
 
 
 33
 However, the proper remedy for the OSC's failure cannot be an appendage to this appeal from a legally correct decision of the Board that it had no jurisdiction to consider petitioner's appeal from her job termination.
 
 
 34
 681 F.2d at 875.
 
 
 35
 Lack of jurisdiction is lack of jurisdiction. If, as in Wren, a claim that a removal was an act of reprisal cannot be an appendage to an appeal from a Board dismissal for lack of jurisdiction over a probationary employee it is at least difficult to see how a claim that the mere bringing of charges was an act of reprisal can be an appendage to this appeal from a Board dismissal for lack of jurisdiction over a voluntary resignee.
 
 
 36
 Here, as it was in Wren, the question is not whether a reprisal claim should be heard but where and under what conditions it should be heard. As the court did in Wren, we hold only that it can't be heard as part of a case over which the Board has no jurisdiction.
 
 V. Cruz' Contentions
 
 37
 Cruz' citation of Williams v. Dept. of the Army, 715 F.2d 1485 (Fed.Cir.1983) and similar cases is inapt, for Cruz ignores a crucial distinction: those cases involved appealable agency actions over which the Board had jurisdiction, whereas a crucial and dispositive fact in the present case is that Cruz voluntarily resigned, as the AJ found and as the Board and this court have agreed. By that act, Cruz lost all right to appeal any issue to the Board, 5 C.F.R. Sec. 752.401(b)(9) (1989), much less an issue over which the Board lacks independent jurisdiction.
 
 
 38
 Cruz mistakenly relies on Durden v. Dept. of the Navy, 18 M.S.P.R. 373 (1983) as requiring the Board to notify him of a right to appeal the Board's decision to the EEOC. First, Durden is not precedent in this court. Second, the Board noted that the handicap discrimination issue in Durden required analysis to determine whether Durden's retirement in the face of the agency's advice to consider retirement or be removed because of his handicap was a constructive discharge, whereas the proposal to remove Cruz was based on repeated acts of insubordination, on conduct most destructive of the efficiency of the service. Third, unlike the present case, the agency suggested retirement in Durden and it was found, contrary to the facts here, that there was not even an arguable basis for Durden's discharge, the agency having previously accommodated his handicap. Finally, and most important, the Board said Durden was a narrow exception because handicap discrimination was the sole reason for the threatened discharge, i.e., the threat and Durden's retirement were "intertwined" with, indeed based on, Durden's handicap. There is no basis for a similar exception here, where Cruz' assertion of reprisal does not affect the voluntariness of his resignation in the face of serious charges of insubordination and unacceptable performance. Unlike the situation in Durden, as the Board held, Cruz' "reprisal claim, even if true, cannot be considered the sole reason here, since the agency demonstrated an arguable basis" for the proposal to remove him.
 
 
 39
 Cruz argues that a court may, after learning a fact "necessary to its principal jurisdiction" is absent, go on to decide issues within its pendent or ancillary jurisdiction, citing Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970) and United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The argument is unavailing, for in those cases the courts originally had jurisdiction that was subsequently defeated by later events. Here the Board never had jurisdiction. Cruz' resignation was voluntary ab initio and there was no jurisdiction on which jurisdiction over any other issues could "pend". That Cruz' resignation was not found to have been voluntary until November 25, 1988 does not change its voluntary nature at its birth on February 16, 1988. The Board had no jurisdiction at that point and did not acquire jurisdiction thereafter. Surely Cruz' mere assertion of reprisal, over which the Board has no independent jurisdiction, could not have created a basis for Board jurisdiction over the appeal. Two zeros cannot make a one.
 
 
 40
 VI. Potential Fora for Cruz' Reprisal or "Discrimination"
 
 Claim
 
 41
 Cruz implies in his briefs that the Board's refusal to decide his reprisal claim and notify him of a right to appeal to the EEOC or the district court deprived him of all chance for review of what he calls his "Title VII discrimination claim". We need not and therefore do not decide that question. We note, however, that an appeal from the Board may not be the only route for presentation of Cruz' reprisal "Title VII" claim, a claim that would appear to fall within the subject matter jurisdiction of fora other than the Board. First, the district court has subject matter jurisdiction over Title VII claims. If Cruz believes he has been the victim of discriminatory acts violative of Title VII, he may file a complaint and obtain a de novo trial in the district court under 42 U.S.C. Sec. 2000e-5(f)(3). Chandler v. Roudebush, 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976). Further, if Cruz filed a complaint with the EEOC and the EEOC dismissed his complaint because he was presenting the same issues to a court, the EEOC may reopen its proceedings on that complaint after the Board has dismissed his appeal for lack of jurisdiction. Weaver v. Garrett, EEOC App. 01894059 (April 26, 1990). Lastly, Cruz may submit his reprisal claim to the Office of Special Counsel which may, if warranted, take full remedial action. 5 U.S.C. Sec. 1206(c)(1).[7]
 
 CONCLUSION
 
 42
 Because the Board decided only its jurisdiction and made no decision on the merits of Cruz' reprisal assertion, the only issue on this appeal is the Board's jurisdiction and there was no basis for notifying Cruz of any right to appeal the Board's decision to the EEOC. See Rose, 721 F.2d at 357 ("Petitioner also raises numerous other issues relating to the merits of her case. However, we cannot consider these matters since this appeal raised only the jurisdictional issue.") The Board was entirely correct in looking first to its jurisdiction, and having found that it never had any, and that the reprisal claim was not intertwined with the issue of voluntariness, in referring Cruz to this court as a proper forum for review of Board decisions on its jurisdiction. Ballentine v. Merit Systems Protection Board, 738 F.2d 1244 (Fed.Cir.1984).
 
 
 43
 Congress has determined that the Board has no jurisdiction over voluntary resignations. 5 U.S.C. Sec. 7512. Congress has also determined that the Board has no jurisdiction over discrimination claims per se, having placed that jurisdiction in the district court. 42 U.S.C. Sec. 2000e-5(f)(3). Congress has also determined that the Board must decide discrimination claims when discrimination is alleged to have been the basis for appealable actions over which the Board does have jurisdiction. 5 U.S.C. Sec. 7702. It might have been neater and less complicated if Congress had made no jurisdiction-determining distinction between appealable actions and voluntary resignations and required the Board to decide discrimination claims in either type of case. We are not legislators, however, and are not at liberty to so manipulate the statutes as to achieve that result.
 
 
 44
 We do not sit to decide hypotheticals. It may be that a resignation case could arise in which the facts would compel a Board decision on a reprisal assertion.[8] We hold only that in a case like the present, where the Board has determined that a resignation in the face of serious charges was voluntary, it never acquired jurisdiction to decide anything, including the question of whether there may also have been another reason--one outside the Board's statutorily assigned jurisdiction--for proposing those valid charges. See Christianson v. Colt Industries Operating Corp., 486 U.S. 800, 818, 108 S.Ct. 2166, 2178, 100 L.Ed.2d 811 (1988) (on concluding lack of jurisdiction, court cannot decide the merits but is limited to dismissing or transferring the case).
 
 
 45
 In sum, we need not and do not decide whether Cruz' reprisal or "discrimination" claim may be decided in another forum or in which forum it might be decided; we hold only that it cannot be decided by the Board in a case over which the Board never acquired jurisdiction.
 
 
 46
 AFFIRMED.
 
 
 47
 SKELTON, Senior Circuit Judge, and NEWMAN, Circuit Judge, dissent.
 
 
 48
 SKELTON, Senior Circuit Judge, with whom NEWMAN, Circuit Judge, joins, dissenting.
 
 
 49
 I respectfully dissent.
 
 
 50
 This litigation, in its present stage, is basically a discrimination case because the reprisal discrimination issue was deliberately not decided by the board. The failure of the board to decide that issue is the sole issue in this appeal. The case is governed and controlled by 5 U.S.C. Sec. 7702, which requires the board to decide both the issue of discrimination and the appealable action. The statute is not enforced by the majority decision. Its applicable provisions state:
 
 
 51
 Sec. 7702. Actions Involving Discrimination
 
 
 52
 (a)(1) Notwithstanding any other provision of law, and except as provided in paragraph (2) of this subsection, in the case of any employee or applicant for employment who--
 
 
 53
 (A) has been affected by an action which the employee or applicant may appeal to the Merit Systems Protection Board, and
 
 
 54
 (B) alleges that a basis for the action was discrimination prohibited by--
 
 
 55
 (i) section 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e-16),
 
 
 56
 (v) any rule, regulation, or policy directive prescribed under any provision of law described in clauses (i) through (iv) of this subparagraph,
 
 
 57
 the Board shall, within 120 days of the filing of the appeal, decide both the issue of discrimination and the appealable action in accordance with the Board's appellate procedures under section 7701 of this title and this section.
 
 
 58
 (2) In any matter before an agency which involves--
 
 
 59
 (A) any action described in paragraph (1)(A) of this subsection; and
 
 
 60
 (B) any issue of discrimination prohibited under any provision of law described in paragraph (1)(B) of this subsection; the agency shall resolve such matter within 120 days. The decision of the agency in any such matter shall be a judicially reviewable action unless the employee appeals the matter to the Board under paragraph (1) of this subsection.
 
 
 61
 (3) Any decision of the Board under paragraph (1) of this subsection shall be a judicially reviewable action as of--
 
 
 62
 (A) the date of issuance of the decision if the employee or applicant does not file a petition with the Equal Employment Opportunity Commission under subsection (b)(1) of this section, or
 
 
 63
 (B) the date the Commission determines not to consider the decision under subsection (b)(2) of this section.
 
 
 64
 (b)(1) An employee or applicant may, within 30 days after notice of the decision of the Board under subsection (a)(1) of this section, petition the Commission to consider the decision.
 
 
 65
 (emphasis supplied).
 
 
 66
 As may be seen by reading this statute, it is an anti-discrimination law that was enacted by Congress for the specific purpose of eliminating discrimination against employees in the workplace. It was the intention and will of Congress that the statute be complied with by all employers, agencies, and boards. It is the court's duty to enforce compliance with the statute. If this court fails to require the board to comply with the statute by deciding the discrimination issue in this case, it will be acting contrary to the statute and the will and intention of Congress, and the effect will be to deny due process rights to petitioner (Cruz), as discussed below.
 
 
 67
 I do not find a full and complete discussion in the majority opinion of the facts nor of the proceedings below. This is necessary in order to understand and resolve the issue involved in this appeal. For that reason, an additional statement of the facts and proceedings is as follows.
 
 I. Facts and Proceedings Below
 
 68
 Cruz, with a Ph.D degree, was an Education Services Specialist for the Navy with 24 years of service during which he had received ratings of which seven were outstanding, five highly satisfactory, and one satisfactory. From time to time he encountered difficulties with his superiors which resulted in his filing several administrative EEO complaints against them. He claimed that they unduly criticized and harassed him regarding his work. His troubles increased when a Mrs. Kennedy, a woman younger in service than Cruz, was promoted over him. He says that no one during his 24 years of service had harassed him with more frequency and fervor than Mrs. Kennedy. He accused her of verbally abusing him both in public and behind closed doors at an area conference, which caused him to suffer a severe anxiety attack that required the services of a psychiatrist and which incapacitated him for a time. He alleged that she continually harassed him over his tuition assistance program and when she ordered him to make a TA presentation at a workshop he had another anxiety attack. She demanded medical certification after disallowing sick leave on more than one occasion. Finally, Cruz alleges that she wrote a letter to her superior requesting that he be removed. Pursuant to this request, the head of the agency issued a proposal on January 29, 1988, to remove Cruz for alleged insubordination and unacceptable work performance.
 
 
 69
 On February 16, 1988, Cruz submitted a written resignation from his job, stating among other things:
 
 
 70
 It is under extreme duress, great despondency, and tremendous embarrassment that I submit my resignation. .... On 22 Jan. 1988, determined to expose me, she [Mrs. Kennedy] reissued a request for medical certification ... which brings me to this embarrassing juncture of having to admit that the unbearable problems of having to cope with my job and management have taken their toll on me. I can't take it any more. I resign because I value my sanity. My resignation is effective 1 Mar. 1988.
 
 
 71
 (emphasis supplied).
 
 
 72
 Cruz also signed a government 52 resignation form on February 22, 1988. The form contained a space with the following heading:
 
 
 73
 Reason for resignation (Note: Please give reason for your resignation).
 
 
 74
 Cruz wrote in his handwriting the following reasons for his resignation:
 
 Racial discrimination
 Reprisal for EEO involvement
 Harassment and mental anguish
 
 75
 Cruz' resignation letter and Form 52 put the government on notice that he was contending that his resignation was involuntary. The Navy separated Cruz on March 1, 1988, because of his letter of resignation.
 
 
 76
 Cruz appealed to the board alleging that his resignation was not voluntary, but was coerced by the actions and duress of the agency, and that the agency had discriminated against him as a reprisal for his having filed Equal Employment Opportunity (EEO) complaints against the agency and its officers. The board exercised its authority and jurisdiction by accepting the appeal and assigning it to an administrative judge (AJ) for trial. The AJ conducted a trial, heard witnesses, made findings of fact, and rendered a decision on both the appealable action of involuntary resignation and the reprisal discrimination issue and on the charges of the agency against Cruz. In his decision, he held that Cruz was guilty of insubordination and that his work was unsatisfactory, and the charges of the agency were sustained. He held that Cruz' resignation was not involuntary and was not coerced, but was voluntary. The reprisal discrimination issue was decided by the AJ against Cruz by his holding that there was no causal connection between the EEO complaints and the removal action filed by the agency against Cruz. The AJ then dismissed the case for lack of jurisdiction. Cruz then appealed to the full board which denied his petition for review. The board then reopened the case on its own motion and vacated that portion of the AJ's decision dealing with the reprisal discrimination issue, holding that the AJ should not have decided that issue. The rest of the AJ's opinion was approved. The board notified Cruz that he had a right to appeal to this court within 30 days. This appeal followed.
 
 II. Discussion
 
 77
 As stated above, this case is governed and controlled by 5 U.S.C. Sec. 7702. That statute provides in clear and unmistakable terms that notwithstanding any other provision of law, in the case of any employee who has been affected by an action which he may appeal to the board and who alleges that a basis for the action was discrimination prohibited by the Civil Rights Laws, the board shall within 120 days of the filing of the appeal, decide both the issue of discrimination and the appealable action. (emphasis supplied).
 
 
 78
 The majority states that there is no appealable action in this case and for that reason the board did not have to decide the discrimination issue. In this, the majority is mistaken.
 
 
 79
 (1) The Appealable Action
 
 
 80
 It is well established and universally held by all courts which have considered the question that an involuntary resignation is an adverse action by an agency that may be appealed to the board. This was ably stated by the court in Gratehouse v. United States, 512 F.2d 1104, 1108, 206 Ct.Cl. 288 (1975), when it said:
 
 
 81
 It is now hornbook law in our jurisdiction that an involuntary resignation constitutes an adverse action by the agency. (cases cited)
 
 
 82
 An involuntary resignation by an employee is a discharge of that employee by the agency. See Paroczay v. Hodges, 297 F.2d 439, 441, n. 4 (D.C.Cir.1961) where the court said that if a resignation is coerced, the resulting separation constitutes a discharge. On remand of that case, the district court held:
 
 
 83
 If the resignation was involuntarily given, however, then plaintiff's separation from government employment constituted a discharge, and he would be entitled to certain procedural rights....
 
 
 84
 Paroczay v. Hodges, 219 F.Supp. 89, 90 (D.D.C.1963)
 
 
 85
 In Patrick F.X. McGucken v. United States, 407 F.2d 1349, 1350, 187 Ct.Cl. 284, 287 (1969) the court quoted with approval the above decision of the D.C. Circuit Court in Paroczay as follows:
 
 
 86
 In Paroczay v. Hodges, 297 F.2d 439 (D.C.Cir.1961), the court stated that the papers before the District Court created a genuine issue of material fact as to the voluntariness of the resignation, and that summary judgment was therefore not proper. In footnote 4, the court also stated:
 
 
 87
 The issue of coercion is not solved by accepting the contention of defendants that there was no obligation to give the employee an option to resign; for this does not answer the question whether the resignation which was given was coerced. If it was the separation constituted a discharge, and Paroczay had certain rights under the Veterans' Preference Act. * * * [Emphasis supplied]. Id. at 441.
 
 
 88
 (emphasis in original).
 
 
 89
 The Court of Claims then stated in McGucken:
 
 
 90
 If the facts in this case indicated that the resignation was not voluntary, then plaintiff should have been afforded a hearing under the Veterans' Preference Act, 5 U.S.C. Sec. 863 (1964). This is so because, as was stated in Paroczay, supra, an involuntary resignation is a discharge.
 
 
 91
 407 F.2d at 1350, 187 Ct.Cl. at 287 (emphasis supplied).
 
 The court also held in McGucken:
 
 92
 As the court in Paroczay, supra, indicated, the voluntary nature of a resignation is an issue of fact.
 
 
 93
 407 F.2d at 1351, 187 Ct.Cl. at 288 (emphasis supplied).
 
 
 94
 In the concurring opinion of Judge Nichols in the Court of Claims decision in Denis E. Cosby v. United States, 417 F.2d 1345, 1346-1347, 189 Ct.Cl. 528, 530-532 (1969) it is stated:
 
 
 95
 A coerced resignation is not a resignation at all. It is an adverse action which is legally invalid for failure to follow the procedures laid down in statutes and regulations. McGucken v. United States, 187 Ct.Cl. 284, 407 F.2d 1349, cert. denied, 396 U.S. 894 [90 S.Ct. 190, 24 L.Ed.2d 170] (1969). It necessarily must follow that a purported resignation which stated on its face that it was procured by coercion would be null and void, and no resignation. In that event, the employee not having resigned, factual inquiry whether he was actually coerced would be irrelevant and unnecessary.
 
 
 96
 Here the employee, in two purported resignations, both times stated he resigned "under protest." In common speech (see Webster's Third Unabridged, 1968), as well as among lawyers, the words "under protest" in connection with any action, mean that the person taking it does so because he must and not because he wants to. It suffices to rebut any implication that the action was voluntary.
 
 
 97
 * * * * * *
 
 
 98
 Therefore, nothing decided in this case, as I read it, should be regarded as condoning any relaxation of the vigilance required of the Civil Service Commission and of personnel officers generally, against the acceptance of coerced resignations, whether actually coerced, or so stated in the course of the employee's filling out the applicable form.
 
 
 99
 (emphasis supplied).
 
 
 100
 In Katherine Cunningham v. United States, 423 F.2d 1379, 1385, 191 Ct.Cl. 471, 482 (1970), Judge Nichols stated in his concurring opinion:
 
 
 101
 I concur in the opinion and judgment of the court. As I said, concurring, in Cosby v. United States, 189 Ct.Cl. 528, 530, 417 F.2d 1345, 1346 (1969):
 
 
 102
 * * * * * *
 
 
 103
 If an employee's continued presence in an agency is regarded as undesirable, and if he tenders any piece of paper purporting to be a resignation, the temptation is to snatch at it, thus avoiding the complex ritual and uncertain outcome of an adverse action. It is, I believe, the duty of the personnel officer nevertheless to scrutinize the paper with care, and to reject it as a resignation if it states, clearly or ambiguously, that the resignation is coerced. * * *
 
 
 104
 The same is true if the statement is made in a separate communication submitted by the employee simultaneously or at any time before the purported resignation takes effect.
 
 
 105
 (emphasis supplied).
 
 
 106
 We stated in Schultz v. United States Navy, 810 F.2d 1133, 1136 (Fed.Cir.1987):
 
 
 107
 However, an ostensibly voluntary resignation which was submitted as a result of agency coercion or because of improper advice on its consequences must be treated the same as an adverse action. Perlman v. United States, 203 Ct.Cl. 397, 490 F.2d 928, 933 (1974).
 
 
 108
 The teaching of these cases, which is binding on this court, is:
 
 
 109
 (1) A resignation that shows on its face that it was coerced is an involuntary resignation.
 
 
 110
 (2) An involuntary resignation is an adverse action that is appealable.
 
 
 111
 (3) An involuntary resignation is a discharge, and removal that is appealable.
 
 
 112
 (4) An involuntary resignation entitles an employee to procedural rights, including the right to appeal.
 
 
 113
 (5) A resignation which shows on its face that it was made under coercion (duress) suffices to rebut any implication that it was voluntary.
 
 
 114
 (6) The voluntariness of a resignation is an issue of fact that is appealable to the MSPB (i.e. an appealable action).
 
 
 115
 All of these situations are present in our Cruz case. In the face of these cases and their teaching, how can the majority say that there is no appealable action in the instant case? Does the majority mean to overrule these precedential cases?
 
 
 116
 A discharge is a removal from office and an adverse action that is appealable to the board under the provisions of 5 U.S.C. Sec. 7512, 7513 and 7701.
 
 Section 7512 provides in pertinent part:
 7512. Actions Covered
 
 117
 This subchapter applies to--
 
 
 118
 (1) A removal
 
 
 119
 Since an involuntary resignation is an adverse action and a constructive removal from office, it is appealable to the board as an appealable action. The majority admits that this is true when it states in its opinion:The courts, however, have recognized a corollary proposition, i.e., that the board does have jurisdiction to hear and determine an appeal by an employee whose resignation was not voluntary, an involuntary resignation being deemed a 'constructive removal.'
 
 
 120
 Therefore, Cruz' claim of an involuntary resignation is a claim of constructive removal from office, which is an adverse action that is appealable to the board under Sec. 7512.
 
 
 121
 The regulations of the board also provide for an appeal to the board in removal cases. 5 C.F.R. Sec. 752.301.
 
 
 122
 Cruz' claim of involuntary resignation is also appealable to the board under Sec. 7513 which provides in pertinent part:
 
 Section 7513. Cause and Procedure
 
 123
 (d) An employee against whom an action is taken under this section is entitled to appeal to the Merit Systems Protection Board under section 7701 of this title.
 
 
 124
 Section 7701 provides in pertinent part for an appeal as follows:
 
 Section 7701. Appellate procedure
 
 125
 (a) An employee ... may submit an appeal to the Merit Systems Protection Board from any action which is appealable under any law, rule or regulation.
 
 In Gratehouse, supra, the court said:
 
 126
 Where there is a nonfrivolous allegation by a government employee that his resignation was involuntary, he is entitled, in the usual case, upon timely appeal to CSC [now the board] to a hearing before that body. [cases cited].
 
 
 127
 512 F.2d at 1108.
 
 
 128
 Cruz alleged more than once that his resignation was involuntary because it was the result of duress and coercion. For instance, he alleged before the agency in his letter of resignation and on Form 52 that he was resigning under extreme duress, unbearable and disabling harassment, and mental anguish.
 
 
 129
 He alleged before the board that "the false nature of the charges and the unlawfulness of the agency's actions compelled me to involuntarily resign on 16 February 1988." He also alleged that the communications embargo and onerous working conditions created by his superior, Mrs. Kennedy, coupled with the proposal to remove him was "coercion in its purest form." He also alleged, "consequently, on 16 February 1988, I accepted the terms of the agency and submitted my resignation. I had no choice. I was under extreme duress. My physical and mental health was faltering and my 25-year marriage was being threatened". These allegations of involuntary resignation show that Cruz had an appealable action that invoked the authority and jurisdiction of the board. The AJ did indeed find that Cruz had alleged an appealable action when he found:
 
 
 130
 In light of the appellant's assertions, I found that the appellant's claim constituted a non-frivolous allegation of coercive, involuntary resignation; therefore, he was entitled to a hearing in order to prove his claim.
 
 
 131
 Under all these facts and circumstances and cited authorities, which the majority cannot ignore, it must be concluded that an appealable action was appealed to the board. Consequently, the majority is clearly in error when it says there is no appealable action in the case.
 
 
 132
 (2) Jurisdiction
 
 
 133
 The majority takes inconsistent positions on the board's jurisdiction. On the one hand, the majority opinion states, "it [the board] did not have jurisdiction to decide anything." If that were true, the board could not have made all of the findings and decisions on which the majority relies on insubordination, disrespect, neglect of duty and voluntary resignation, etc. On the other hand, the majority cites with approval and agreement more than a dozen times in its opinion the various findings and decisions of the board, thereby enforcing them, while at the same time saying the board did not have jurisdiction to make them. The majority cannot have it both ways. The majority's inconsistent positions remind me of the old saying that, "you cannot straddle a fence and touch the ground on both sides at the same time."The majority took the position at the outset that Cruz' resignation was voluntary, and it never progressed beyond that point. It never inquired why Cruz resigned, and never considered the fact that his resignation was involuntary due to duress, coercion and harassment. There was no consideration nor discussion of the cases that hold that a resignation due to these causes is involuntary and a discharge and removal from office, and is appealable to the board.
 
 
 134
 Regardless of the inconsistent position taken by the majority, Secs. 7512, 7513, and 7701, and 5 C.F.R. Sec. 752.301, and the above cited cases, plus the admission by the majority, show that the board did indeed have jurisdiction of Cruz' appeal and did have jurisdiction to make the findings and decisions on which the majority relies. Section 7512 provides that a removal from office may be appealed to the board, and the majority admits this is true. As stated above, the instant case involves a constructive removal from office. Therefore, the board had jurisdiction of the appeal under Sec. 7512. Section 7513 provides that an employee against whom an adverse action is taken is entitled to appeal to the board. A constructive removal from office is an adverse action. Accordingly, the board had jurisdiction of this case under that Section. Also, Sec. 7701 provides that an employee may appeal to the board from any action that is appealable under any law, rule or regulation. That is the situation in this case, so the board had jurisdiction under Sec. 7701. The board acknowledged in its opinion that it could have jurisdiction of an appealable action under Sec. 7513(d) and under Sec. 7701(a). Thus, three different statutes and the regulation conferred jurisdiction of this case on the board. The majority errs when it says the board did not have jurisdiction of Cruz' appeal.
 
 
 135
 (3) Threshold Jurisdictional Cases Distinguished
 
 
 136
 The majority appears to take the position that Cruz' involuntary resignation claim is a threshold jurisdictional matter that the board could decide in determining its jurisdiction without deciding the discrimination issue. While the board's jurisdiction may be a threshold matter in certain mixed cases involving discrimination, the threshold matter in those cases bars the underlying action as a matter of law and are not applicable here. Examples of such cases are situations where the claims are untimely filed, as in Hopkins v. Merit Sys. Protection Bd., 725 F.2d 1368 (Fed.Cir.1984); Wallace v. Merit Sys. Protection Bd., 728 F.2d 1456 (Fed.Cir.1984) and Ballentine v. Merit Sys. Protection Bd., 738 F.2d 1244 (Fed.Cir.1984). Other examples are cases where the claim is barred by limitations or laches, or the claimant is not covered by Civil Service Laws, or is a probationary employee without appeal rights, as in Granado v. Department of Justice, 721 F.2d 804 (Fed.Cir.1983), and Wren v. Merit Sys. Protection Bd., 681 F.2d 867 (D.C.Cir.1982), cited by the majority, or is a member of the armed services claiming a civil service annuity where the claim is not allowable, or is an employee claiming an annuity who does not have five years of creditable service required by law. The majority cites Synan v. Merit Sys. Protection Bd., 765 F.2d 1099 (Fed.Cir.1985) which is another threshold case that is not applicable here because there the action was barred by a statute. In that case an employee was suspended for 14 days and he appealed to the board. We held that 5 U.S.C. Sec. 7512(2) barred his appeal because under that statute he could not appeal to the board unless he had been suspended for more than 14 days. In Ballentine, supra, we held that a threshold matter is one not related to the merits of the discrimination claim. In the instant case Cruz' two claims are intertwined and related. A threshold jurisdictional issue is one that is raised and determined by the pleadings and which bars the action without a hearing because of a statute. There is no such issue or statute in the instant case.
 
 
 137
 Cruz' claim of involuntary resignation is a substantive claim which entitles him to procedural rights, including those of appeal, hearing and decision. His claim is not a threshold jurisdictional matter that bars the underlying action as a matter of law, and it cannot be summarily dismissed by the board under the pretext of determining its jurisdiction.
 
 
 138
 The majority makes the surprising statement that, "Congress has determined that the board has no jurisdiction over voluntary resignations. 5 U.S.C. Sec. 7512." It is at once apparent that the majority reads too much into the statute. There is no mention whatever in the statute of a voluntary resignation or any other kind of resignation. The statute does provide for an appeal of a removal from office and, as shown above, a removal includes a constructive removal due to coercion, duress or harassment, which Cruz claims is what happened to him. His claim is appealable to the board.
 
 
 139
 (4) The Failure of the Agency to Advise Cruz of His Appeal Rights
 
 
 140
 Cruz stated in his resignation letter and on Form 52 that he signed that he was resigning under extreme duress, harassment and discrimination. Thereafter, there was correspondence between him and the agency regarding his resignation and his right to appeal to the board. The agency acknowledged in writing that Cruz had stated in his letter that he was resigning under "extreme duress." The agency thus admitted that it was put on notice that Cruz' resignation was involuntary. Under these circumstances the agency had a duty to advise Cruz that he had a right to appeal an involuntary resignation to the board. The board admitted in its opinion that the agency advised him in writing that, "if he wanted to contest the proposed removal on its merits, he would have to withdraw his resignation," which implied that he would have no right of appeal if he did not do so, and that withdrawal of his resignation was the only way he could appeal to the board. Cruz was never advised by the agency that he could appeal an involuntary resignation.
 
 
 141
 The majority says that the agency warned Cruz twice that he would forfeit his appeal rights and that he would suffer a loss of appeal rights if he did not retract his resignation. Furthermore, the majority states that, "By that act, [resignation] Cruz lost all right to appeal any issue to the board." (emphasis supplied). I respectfully submit that these statements are not in accordance with the law, but are actually contrary to the law, since neither the board nor the majority distinguish between voluntary resignations and involuntary resignations. The case of Alan Donald McCormack v. United States, 204 Ct.Cl. 371 (1974) is squarely in point. That case involved an involuntary resignation situation. There the court said:
 
 
 142
 The plaintiff did take action sufficient to put the government on notice that the plaintiff viewed the 'resignation' as an adverse action. At this point, the government, while it may not acquiesce in plaintiff's view, must at least inform the plaintiff of the administrative rights attaching to an involuntary resignation.
 
 
 143
 204 Ct.Cl. at 378.
 
 
 144
 * * * * * *
 
 
 145
 After the plaintiff made it sufficiently clear to the government that he deemed his resignation to be other than voluntary, the government was required to state in detail the various procedures available to the plaintiff to contest the allegedly adverse action and the remedies available.
 
 
 146
 204 Ct.Cl. at 380.
 
 
 147
 The court reversed the case because of the failure of the agency to advise the plaintiff of his appeal rights. Also, see Covington v. Department of Health & Human Servs., 750 F.2d 937 (Fed.Cir.1984), and Schultz v. United States Navy, 810 F.2d 1133 (Fed.Cir.1987) which held that it was error for an agency to give the wrong advice to an employee regarding his appeal rights. In Covington we held:
 
 
 148
 In this case, the agency was responsible for Covington's lack of an informed choice. A decision made "with blinders on", based on misinformation or a lack of information, cannot be binding as a matter of fundamental fairness and due process. Cf. Shubinsky v. United States, 488 F.2d 1003, 1006, 203 Ct.Cl. 199, 204 (1973) (Government's misleading notice of preference-eligible rights and withholding of information concerning plaintiff's right to appeal adverse action entitles plaintiff to adjudication on the merits).
 
 
 149
 750 F.2d at 943.
 
 
 150
 * * * * * *
 
 
 151
 Covington's appeal should not be prejudiced by the agency's and the Board's failure to inform him of his applicable rights as required by statute and regulations. See McCormack v. United States, 204 Ct.Cl. 371, 378 (1974) (Government, after put on notice the plaintiff considered his resignation to be involuntary, must inform plaintiff of all administrative rights attaching to an involuntary resignation).
 
 
 152
 750 F.2d at 944.
 
 
 153
 The board admitted in its opinion that Cruz contended before the board that he would not have resigned "if the agency had notified him of his appeal rights." Therefore, the failure of the agency to advise him that he could appeal an involuntary resignation and the misleading advice it gave him was harmful error that requires reversal of this case. The above cases are binding precedents on this court.
 
 
 154
 (5) The Discrimination Claim
 
 
 155
 It is undisputed that there was a claim of reprisal discrimination in the appeal that Cruz filed with the board. Cruz alleged before the agency and before the board that the agency forced him to involuntarily resign from his job as a reprisal against him because he had filed EEO complaints against the agency and its officers. The AJ properly considered the claim and decided it against Cruz. The full board vacated this part of the AJ's decision, stating:
 
 
 156
 Since we find that the administrative judge should have made no findings regarding the appellant's reprisal claims, we need not reach this contention.
 
 
 157
 This statement, which admits the existence of the claim, and the decision of the AJ, show without question that a claim of reprisal discrimination was a part of Cruz' appeal to the board. Therefore, the second issue (discrimination) contemplated by Sec. 7702 is present in the case.
 
 
 158
 (6) The Mandate of 5 U.S.C. Sec. 7702
 
 
 159
 Since Cruz' appeal to the board consisted of an appealable action and a claim of reprisal discrimination, the case is in legal parlance a "mixed case." It falls squarely within the provisions of 5 U.S.C. Sec. 7702. The government contends that it is not a mixed case because it says that reprisal for EEO involvement is not discrimination encompassed within the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e-16, but instead is only a prohibited employment practice under 5 U.S.C. Sec. 2302(b)(9). I disagree. While such reprisal discrimination is a prohibited employment practice, it is also discrimination within the meaning and provisions of the Civil Rights Act. See 42 U.S.C. Sec. 2000e-3; Smith v. Horner, 846 F.2d 1521 (D.C.Cir.1988); Ayon v. Sampson, 547 F.2d 446, 450 (9th Cir.1976). Thus, the reprisal discrimination complaint of Cruz presents a civil rights (Title VII) issue and, along with his appealable action, makes this case a mixed case over which the board had jurisdiction.
 
 
 160
 The law is clear that once a mixed case (i.e., one involving an appealable action and a discrimination issue) is appealed to the MSPB, the board is required to decide both issues within 120 days. 5 U.S.C. Sec. 7702; 5 C.F.R. Sec. 1201.156; Ballentine v. Merit Sys. Protection Bd., 738 F.2d 1244 (Fed.Cir.1984). The board failed to follow this requirement in the instant case, as it did not decide the discrimination issue. This was error on the part of the board.
 
 
 161
 Our in banc decision in Williams v. Department of the Army, 715 F.2d 1485 (Fed.Cir.1983) is the law of this circuit on mixed cases involving a discrimination claim. In that case we held that under 5 U.S.C. Sec. 7702 " 'mixed' must be understood as discrimination mixed with an appealable action." Id. at 1487 n. 3. Also, we held that "cases falling within Sec. 7702 have been termed 'mixed'." Id. We stated further that:
 
 
 162
 An examination of petitioner's appeal to the MSPB discloses that the petition is founded upon a removal action appealable to the board under Sec. 7701 and contains an allegation of prohibited racial discrimination under the Civil Rights Act referenced in Sec. 7702(a)(1)(B)(i). Thus the case is one which falls squarely within Sec. 7702.
 
 
 163
 715 F.2d Id. at 487-88.
 
 
 164
 An analogous situation exists in the Cruz case.
 
 
 165
 We look to the opinion in the controlling Williams case to determine the proper procedure to be followed when a mixed case is filed with the board. When this is done, we find that there we quoted with approval the following holding of the Fifth Circuit in Wiggins v. United States Postal Service, 653 F.2d 219 (1981).
 
 
 166
 Section 7702 explicitly requires the board in appealable cases alleging both discrimination and nondiscrimination claims to decide both issues. 5 U.S.C. Sec. 7702(a)(1)(B).
 
 
 167
 715 F.2d at 1488 (emphasis supplied).
 
 We also held in Williams:
 
 168
 Throughout Sec. 7702, the issues of a mixed case are tied together for resolution at the same time. Section 7702(a)(2) requires an "agency" (i.e., not the MSPB) to decide "both the issue of discrimination and the appealable action" within 120 days and "the decision" is judicially reviewable or appealable to the board. Similarly, Sec. 7702(a)(1)(B) requires the Board (i.e., the MSPB) also to decide all issues in the case within 120 days. Moreover, throughout Sec. 7702, the word "decision" is used in referring to the administrative result of the proceeding in a mixed case, and the words "judicially reviewable action," again in the singular, is used concerning the review which may follow from the decision, whether the decision be that of an agency, the Board, the Equal Employment Opportunity Commission, or a special panel to which a matter may be certified.
 
 
 169
 715 F.2d at 1489 (emphasis supplied).
 
 
 170
 The teachings of Williams make it very clear that Cruz is a mixed case and that the board was required to decide both the appealable action and the claim of discrimination. The board did not decide both issues, but instead bifurcated the case and decided only the appealable action which has now been appealed to our court. Again, we look to Williams which holds that a mixed case cannot be bifurcated. There we said:
 
 
 171
 Thus, we are led to conclude for similar reasons that Congress did not direct or contemplate bifurcated review of any mixed case. Rather, Sec. 7702 reflects the statement in the legislative history:
 
 
 172
 In such cases, questions of the employee's inefficiency or misconduct, and discrimination by the employer, will be two sides of the same question and must be considered together.
 
 
 173
 S.Rep. No. 95-969, 95th Cong., 2d Sess. 53, reprinted in 1978 U.S.Code Cong. & Ad.News 2723, 2775.
 
 
 174
 715 F.2d at 1490.
 
 
 175
 It is clear that the bifurcated issue of the voluntariness of Cruz' resignation is intertwined with his claim of discrimination which the board has not decided although required to do so by Sec. 7702.
 
 
 176
 Unless the discrimination issue is decided, Cruz will not be able to present his discrimination claim in any forum, which will be a denial of due process. I do not believe that Congress intended such a result. It is more logical to believe that Congress by enacting the civil rights statutes and the Civil Service Reform Act, and that the President by issuing his message accompanying Reorganization Plan No. 1 of 1978, 3 C.F.R. 321 (1978), reprinted in 5 U.S.C.App. at 1155 (1982), 92 Stat. 3781 (1978), intended to combat job discrimination in all its forms, and that confusing overlap, duplication and bifurcation of cases by boards and courts in discrimination cases would be eliminated.
 
 
 177
 Section 7702 mandates the board to decide both of the issues in this mixed case. It has no other choice. The board has deliberately ignored this mandate and by doing so has thwarted and contravened the will of Congress. This error should be corrected.
 
 
 178
 Cruz has filed a motion in this appeal asking the court to transfer the case to an appropriate district court. The case is not judicially reviewable by a district court at this stage of the proceedings, because the board has not decided both the appealable action and the reprisal discrimination issues. We held in Ballentine v. Merit Sys. Protection Bd., supra:
 
 
 179
 When an appeal has been taken to the M.S.P.B., until the discrimination issue and the appealable action have been decided on the merits by the M.S.P.B., an appellant is granted no rights to a trial de novo in a civil action under Sec. 7702 or Sec. 7703.
 
 
 180
 738 F.2d at 1246. See also 5 U.S.C. Sec. 7702(a)(3). The motion should be denied.
 
 
 181
 (7) The Board's Rejection of the Administrative Judge's
 
 Decision on Discrimination
 
 182
 The AJ decided the issue of discrimination along with decisions on other issues in the case. The board reopened the case on its own motion and rejected the discrimination decision of the AJ without disturbing his decisions on other issues. It is obvious that the case was reopened for this specific purpose. This rejection of the discrimination part of the AJ's decision was totally unnecessary, because the board was dismissing the case, anyway, and the dismissal included the discrimination issue. When that issue was disposed of by the dismissal, there was no need for the board to do anything more about it. However, the facts indicate that the board wanted to make doubly sure by this stratagem that there would not be a decision on the discrimination issue by the board in this case. This unnecessary and pointed action by the board directed solely to the discrimination issue had the effect of cutting off the rights of Cruz to appeal the issue to a district court or to the EEOC, as there was no decision to appeal from. By this means, the board effectively deprived Cruz of his appeal rights under the civil rights laws and the anti-discrimination statutes enacted by Congress. I would hold that this action by the board was unlawful, arbitrary, capricious and an abuse of discretion, and would set it aside under the provisions of 5 U.S.C. Sec. 7703(c).
 
 
 183
 (8) Speculative Comments of the Majority on Future Relief
 
 
 184
 For Cruz In Other Fora, Etc.
 
 
 185
 The majority opinion states, "we do not sit to decide hypotheticals," yet the suggestions it makes as to potential fora available in the future to Cruz for his reprisal or discrimination claim appear to fall squarely in that category. First, the majority says that Cruz can obtain a de novo trial in a district court on his discrimination claim. That is contrary to our decision in Ballentine where we held:
 
 
 186
 Until the discrimination issue and the appealable action have been decided on the merits by the M.S.P.B., an appellant is granted no rights to a trial de novo in a civil action under Section 7702 or Section 7703.
 
 
 187
 Furthermore, Sec. 7702(a)(3)(A) and (b)(1) provide that any decision of the board on a discrimination issue shall be a judicially reviewable action (i.e. appealable to a district court) as of the date of the issuance of the decision, or appealable to the EEOC within 30 days after notice of the decision. These provisions mean that there can be no appeal to a district court or the EEOC until and unless the board has first decided the issue. Of course, the issue has not been decided by the board in this case. If Cruz attempts to file a new complaint after his present case is terminated here, he would find that it is moot or barred by res judicata because it has been litigated in this court. Any new complaint would necessarily have to involve only facts that arose after the instant case has been disposed of by this court, and that would be a new and different case.
 
 
 188
 Secondly, the majority says that if Cruz filed a complaint with the EEOC, and if the EEOC dismissed the complaint, the EEOC may reopen its proceedings. This is highly speculative and unsupported by any authority except the EEOC case cited by the majority, which is not a precedent for this court as the EEOC is not a court. Besides, such a procedure is contrary to Ballentine and Sec. 7702(a)(3)(A) and (b)(1).
 
 
 189
 Finally, the majority suggests that Cruz could submit his discrimination claim to the Office of Special Counsel under 5 U.S.C. Sec. 1206(c)(1). This statute was repealed by Public Law 101-12, Section 3(a)(8) on April 10, 1989, 103 Stat. 18. In any event, an appeal to the Office of Special Counsel would be a highly speculative and impractical procedure. The majority has not cited any case that supports this suggestion. The Office of Special Counsel is charged primarily with the duty of investigating and prosecuting government employees who are charged with prohibited personnel practices.
 
 
 190
 Under the facts and applicable law, Cruz' discrimination complaint can only be considered and decided by the board, and the board's obligation to do so can only be enforced by this court. At the present stage of the proceedings, it is the duty of this court to enforce this obligation of the board.
 
 
 191
 During this appeal the court, on motion of the respondent, struck and excluded certain material from the record in this case. Nevertheless, the majority has commented on this excluded material in footnote 5 by saying, "Cruz improperly includes [present tense] in the appendix ... documents related to an EEOC complaint he filed in February 1988 and twice amended in March, 1988. ... those documents are [present tense] irrelevant ... they were excluded from the appendix and we have necessarily ignored them." The majority does not state by what authority it is able to comment on documents not in the record. Neither does it explain how it can assert that those documents are not relevant and at the same time say that they have been ignored by the majority. If the purpose of the majority in commenting on this excluded material is to raise a question whether Cruz has an appeal pending before the EEOC at the present time that involves the issues in this case, the question is easily answered. A careful and detailed search of the record shows that there is no evidence whatever that Cruz has a case of any kind pending before the EEOC at the present time.
 
 
 192
 (9) Conclusion
 
 
 193
 I would set aside the board's decision rejecting the discrimination decision of the AJ, and I would remand the case with instructions to the board to treat this case as a mixed case within the meaning of 5 U.S.C. Sec. 7702, and to decide both the appealable action of involuntary resignation, and the discrimination issue as required by that statute, and to notify Cruz that he could appeal the case to the EEOC within 30 days or to a district court if he has not previously filed a petition with the EEOC. This would afford Cruz his due process rights, and the requirements of the civil rights and anti-discrimination laws would be complied with.
 
 
 
 [1]
 The panel opinion issued in this case on June 25, 1990, 906 F.2d 689, was vacated on November 1, 1990, 918 F.2d 937
 
 
 [2]
 5 U.S.C. Sec. 7512 reads in pertinent part:
 This subchapter applies to--
 (1) a removal;
 (2) a suspension for more than 14 days;
 (3) a reduction in grade;
 (4) a reduction in pay; and
 (5) a furlough of 30 days or less;
 
 
 [3]
 A broad range of subject matter, none of it relevant here, is set forth as within the Board's jurisdiction in 5 C.F.R. Sections 1201.2 and 1201.3(a)(4)-(19) and 1201.3(b)
 
 
 [4]
 5 U.S.C. Sec. 7702 reads in pertinent part:
 (a)(1) Notwithstanding any other provision of law, and except as provided in paragraph (2) of this subsection, in the case of any employee or applicant for employment who--
 (A) has been affected by an action which the employee or applicant may appeal to the Merit Systems Protection Board, and
 (B) alleges that a basis for the action was discrimination prohibited by--
 (i) section 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e-16),
 (ii) section 6(d) of the Fair Labor Standards Act of 1938 (29 U.S.C. 206(d)),
 (iii) section 501 of the Rehabilitation Act of 1973 (29 U.S.C. 791),
 (iv) sections 12 and 15 of the Age Discrimination in Employment Act of 1967 (29 U.S.C. 631, 633a), or
 (v) any rule, regulation, or policy directive prescribed under any provision of law described in clauses (i) through (iv) of this subparagraph, the Board shall, within 120 days of the filing of the appeal, decide both the issue of discrimination and the appealable action in accordance with the Board's appellate procedures under section 7701 of this title and this section.
 (Emphasis added).
 
 
 [5]
 Cruz' suggestion that the agency sought to force his resignation founders on the Navy's repeated invitations that he retract it, and its warnings of the consequences (loss of appeal rights) if he did not retract, hardly the acts of an agency trying to force a resignation. Cruz thrice refused to "stand pat and fight", Christie, 518 F.2d at 587 and thrice adhered to his own unfettered decision to resign. Indeed, as indicated in the text, Cruz announced that his resignation would stand if the Navy took no action on the proposal to remove him
 
 
 [6]
 Cruz improperly includes in the appendix and discusses in his brief documents related to an EEOC complaint he filed in February, 1988 and twice amended in March, 1988. Because the Notice of January 29, 1988 could not have been in "reprisal" for what had not yet occurred, those documents are obviously irrelevant. Because those documents were not part of the record before the Board, 5 U.S.C. Sec. 7703(c), they were excluded from the appendix and we have necessarily ignored them
 
 
 [7]
 We make no comment respecting the viability of any such alternate routes of review
 
 
 [8]
 In a case in which the Board did have jurisdiction, for example, then Circuit Judge, now Chief Judge, Nies said "In an adverse action proceeding, the affirmative defense of reprisal is significant only in those cases which have been determined to have merit." (emphasis added) Sullivan v. Department of the Navy, 720 F.2d 1266, 1278 (Fed.Cir.1983) (Nies, concurring). In Warren v. Department of Army, 804 F.2d 654, 658 (Fed.Cir.1986), Judge Nies' statement was reported as indicating that an agency's good case might not win for the agency if the evidence shows that the motive for the removal was predominantly reprisal, making the agency's asserted reasons for removal pretextual and establishing a nexus between reprisal and removal. We have no quarrel with those statements as applicable to a case within the Board's jurisdiction