**Waguih H. GUIRGUESS, Petitioner,**

v.

**UNITED STATES POSTAL SERVICE,**
**Respondent.**

No. 01–3038.

United States Court of Appeals,
Federal Circuit.

March 11, 2002.

**ROBINSON LABORATORIES,**
**INC., Plaintiff–Appellant,**

v.

**ALS ENTERPRISES, INC.,**
**Defendant–Appellee.**

No. 02–1209.

United States Court of Appeals,
Federal Circuit.

March 5, 2002.

ORDER

The parties having so agreed, it is

ORDERED that the proceeding is DIS-
MISSED under Fed. R.App. P. 42(b).

Before NEWMAN, LOURIE, and RADER, Circuit Judges.

Opinion for the court filed by Circuit Judge LOURIE.

Dissenting opinion filed by Circuit Judge NEWMAN.

## DECISION

LOURIE, Circuit Judge.

Waguih H. Guirguess appeals from the decision of the Merit Systems Protection Board upholding his removal from employment by the United States Postal Office ("the agency"). *Guirguess v. United States Postal Serv.*, No. PH–0752–00–0054–I–1 (M.S.P.B. Aug.29, 2000) (final order). Because the Board properly sustained his removal, we *affirm.*

## DISCUSSION

Mr. Guirguess was employed as a Supervisor of Distribution Operations in the agency's Trenton, New Jersey, Processing and Distribution Center. *Guirguess v. United States Postal Serv.*, No. PH–0752–00–0054–I–1, slip op. at 1 (M.S.P.B. Feb.28, 2000) (initial decision). The agency removed Guirguess, effective November 12, 1999, for engaging in a physical and verbal altercation with a co-worker that resulted in injury to that employee on June 3, 1999. *Id.* at 1, 2.

Guirguess initiated the present appeal to the Board on November 15, 1999, alleging that he did not commit the conduct in question, and that alternatively the penalty of removal was inappropriate under the circumstances. *Id.* at 4. On January 13, 2000, the Administrative Judge ("AJ") assigned to the case heard testimony from various witnesses regarding the events of June 3, including Guirguess himself.

Mr. Edward Isnardi, a maintenance mechanic employed by the agency, testified that he was performing floor repairs pursuant to instructions from his supervisor on the day in question. *Id.* at 2. Isnardi testified that he had constructed a safety barrier around his four-square-foot work area comprised of interlocking "little yellow men" standing three-feet high, and that he was on his hands and knees using a hammer and chisel, among other pieces of equipment, to remove broken pieces of floor tile to make room for replacement pieces. He further testified that in the course of completing his task, he was approached by Guirguess, who shouted at him to stop removing the broken floor tile pieces because Guirguess feared that he was releasing asbestos into the air. *Id.* Isnardi testified that Guirguess "kept screaming" at him despite the fact that he told Guirguess to call his supervisor if he had any concerns about the work he was performing. After Isnardi informed Guirguess a "[m]inimum of six" times that he was merely following orders, Guirguess "picked up the little yellow men and threw them across the floor." Isnardi testified that Guirguess continued to yell and scream at him, and then kicked his tools two or three feet away from his work area using "[a] lot of force." In the process of kicking the tools, Isnardi testified that Guirguess's foot "came back down . . . and landed on my two fingers on my right hand."

Shortly after this altercation, Guirguess called Isnardi's supervisor, Mr. Bill Gienz, who stated in an investigative statement regarding the incident in question that Guirguess yelled and screamed at him to order Isnardi to cease working on the tiles, and that after Guirguess ignored his numerous requests to stop yelling and screaming, he hung up the phone. *Id.* at 3, 4. Gienz also stated that shortly after he hung up the phone with Guirguess, he received a radio call from Isnardi informing him that Guirguess had injured his hand. *Id.* at 3. When he went to Isnardi's work area to investigate what had oc-

curred, he stated that Guirguess was still yelling and "carrying on" despite the fact that he assured him that the work Isnardi was performing did not constitute a safety hazard because it did not involve drilling or any other method by which asbestos fibers could be released into the air. *Id.*

The record indicates that Isnardi had to be taken to the hospital and given an x-ray examination, where the doctor on duty diagnosed his condition as bruised fingers and taped two of the injured fingers together to prevent further aggravation of the injury. *Id.* Although not indicated in the medical report, Isnardi testified that because the doctor "knew [he] was a diabetic ... he was concerned about broken bones [and that] a diabetic could have amputations if [the bones] don't knit properly." *Id.* Isnardi also testified that he was in pain as a result of his injury for the next few days, and that he recalled being given the next day off after the incident.

Guirguess, on the other hand, testified that he approached Isnardi and calmly requested that Isnardi cease working because the employees under his supervision feared that the work constituted a safety hazard. *Id.* at 3–4. He also testified that he never got closer than five feet from Mr. Isnardi, that he never threw the safety barrier across the room, and that he never kicked Isnardi's tools or stepped on his hand. *Id.* at 4. He further testified that he had to wear sneakers on the day in question because of the spurs on his feet, and that therefore he could not have generated the force necessary to cause the injury Isnardi received to his fingers. *Id.* Finally, Guirguess testified that he never yelled or screamed at Gienz, and that he only attempted to have Gienz address the potential safety problem posed by Isnardi's work. *Id.*

Shortly after the hearing, the agency sent Guirguess a proposed settlement agreement, the terms of which are discussed in more detail, *infra.* On February 19, 2000, Guirguess wrote a letter to the AJ explaining that the proposed settlement was "not acceptable to [him], since it is not the agreement that was discussed at the hearing." Guirguess also expressed his dissatisfaction with his counsel, and requested time to locate another attorney to represent him. The AJ did not respond to Guirguess's request, and instead rendered his decision on February 28, 2000. *Id.* at 7. The AJ found Guirguess's testimony that he never engaged in the conduct in question to be untruthful and inconsistent with the evidence of record, and instead found credible the agency witnesses' accounts of his conduct. *Id.* at 4–6. The AJ, citing *Douglas v. Veterans Administration,* 5 MSPB 313, 5 M.S.P.R. 280 (1981), determined that the penalty of removal was appropriate and reasonable under the circumstances because of the seriousness of Guirguess's "unprovoked" and "violent assault" and the resulting loss of confidence on the part of his supervisor. *Id.* at 6–7. The AJ rejected Guirguess's argument that his satisfactory performance ratings during his twenty-four years of federal service was a mitigating circumstance rendering the removal penalty unreasonable. *Id.*

Guirguess petitioned for review to the full Board on March 31, 2000, alleging, *inter alia,* that he did not engage in the conduct in question. He submitted evidence in his defense, including an unnotarized, handwritten letter dated that same day from Mr. Joseph Pepe, Guirguess's union representative, stating that Isnardi had informed him that "he knew that [Guirguess] did not intentionally injure him" and that "he did not want [Guirguess] to lose his job over this." Guirguess argued that because Isnardi's statement created a factual dispute as to

whether Guirguess intentionally injured Isnardi, and because he did not have the opportunity to depose Isnardi, the Board should remand for further proceedings. The full Board denied his petition for review, concluding that Guirguess failed to present any "new, previously unavailable, evidence and that the administrative judge made no error in law or regulation that affects the outcome," and thus rendered the initial decision final. *See* 5 C.F.R. § 1201.113(b). Guirguess timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

■ The scope of our review in an appeal from a decision of the Board is limited. We must affirm the Board's decision unless it was: "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c) (2000). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938).

On appeal, Guirguess no longer alleges that he did not engage in the conduct at issue, as he did throughout all of the proceedings at the Board. Rather, he only argues that the AJ improperly applied the *Douglas* factors in considering whether removal was a reasonable penalty under the circumstances. Guirguess contends that in light of his twenty-four years of federal service, evidence of the unintentional nature of his conduct that was not considered by the AJ, and the AJ's failure to consider a proposed settlement agreement and to allow him the opportunity to obtain new counsel to negotiate a settlement agreement, the removal penalty was overly harsh. In support of his argument that

his actions on the day in question were unintentional, Guirguess has submitted with his brief on appeal a notarized affidavit signed by Isnardi, dated March 19, 2000, in which Isnardi expresses his opinion that Guirguess did not intend to commit an assault or cause him any bodily injury, and states that he informed the AJ of that opinion during off-the-record discussions.

■ In reviewing an agency's penalty decision, the Board is required to ascertain whether the agency has responsibly balanced the factors delineated in *Douglas v. Veterans Administration*, 5 MSPB 313, 5 M.S.P.R. at 305–06. "Penalty decisions are judgment calls best left to the discretion of the employing agency." *Gonzales v. Def. Logistics Agency*, 772 F.2d 887, 889 (Fed.Cir.1985). This court will not disturb a penalty unless it exceeds the range of permissible punishment or is "so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion." *Id.* (quoting *Villela v. Dep't of the Air Force*, 727 F.2d 1574, 1576 (Fed. Cir.1984)).

We conclude that the AJ properly considered all of the relevant *Douglas* factors in determining that the penalty of removal was reasonable, and therefore affirm the Board's decision sustaining that removal. Although the AJ did not explicitly discuss every factor, "[n]ot all of the[ ] factors [are] pertinent in every case." *Douglas*, 5 MSPB 313, 5 M.S.P.R. at 306. The AJ found that Guirguess committed an "unprovoked," "violent assault" on an unsuspecting co-worker that resulted in a serious injury requiring medical attention. Such a finding necessarily indicates that the AJ found Guirguess's conduct to be intentional because an "assault" is by definition an intentional act. *See, e.g., Washington v. City of Philadelphia*, No. CIV. A.87–7000, 1990 WL 107651, at *4 ("A

common law tort of assault and battery *requires an intent* on the part of the actor to cause a harmful or offensive contact.") (emphasis added); *see also Sanchez v. Wallkill Cent. Sch. Dist.,* 221 A.D.2d 857, 633 N.Y.S.2d 871, 871 (N.Y.App.Div.1995) ("There is no such thing as a negligent assault [because] once intentional offensive contact has been established, the aggressor is liable for assault, not negligence."). Furthermore, it would seem rather strange for a fact-finder to use the term "violent" to describe conduct that is not intentional, except perhaps for uncontrollable, unintentional acts resulting from, *e.g.,* a seizure. The AJ therefore fully considered the first *Douglas* factor requiring an analysis of "[t]he nature and seriousness of the offense ... including whether the offense was intentional or technical or inadvertent," *Douglas,* 5 MSPB 313, 5 M.S.P.R. at 305, in determining that Guirguess committed an intentional, "unprovoked," and "violent assault."

■ Moreover, substantial evidence supports that determination. Guirguess did not testify as to whether his conduct was intentional or not because he steadfastly refused to admit that he had even engaged in that conduct. In the absence of any direct testimony, the AJ properly resorted to the circumstantial evidence of intent provided by the agency witnesses. *See Naekel v. Dep't of Transp.,* 782 F.2d 975, 978 (Fed.Cir.1986) (stating that because "there seldom is ... direct evidence" of intent, "circumstantial evidence must generally be relied upon to establish intent"). Isnardi testified that Guirguess became enraged over the work Isnardi was performing, and that he yelled and screamed for an extended period of time before hurling the safety barrier Isnardi erected around his work area across the room. Isnardi further testified that Guirguess approached him, continued yelling at

him while he was on his hands and knees, and then kicked his tools across the floor and in the same motion landed on two of his fingers. That testimony was corroborated by Gienz's statement in his investigative report. Furthermore, Isnardi gave a statement to the agency only days after the incident, in which he stated that after he told Guirguess that he was stepping on his hand, Guirguess "continued yelling and abusing me." Because a reasonable mind could accept this evidence as adequate to support the conclusion that Guirguess intentionally committed the conduct at issue, substantial evidence supports the AJ's determination.

■ The dissent argues that Guirguess presented additional evidence regarding his intent after the AJ's decision that could have changed the outcome of that decision, *viz.,* Isnardi's affidavit and Pepe's letter, and that the full Board abused its discretion by failing to grant Guirguess's petition for review. That evidence, however, does not alter our conclusion. Regarding Isnardi's affidavit, that evidence was never presented to the full Board and thus is not part of the administrative record. The record on appeal is limited to the evidence that was before the Board. 5 U.S.C. § 7703(c); Fed. R.App. P. 16(a). Therefore, because that evidence was neither before the AJ when he made his determination nor before the full Board on Guirguess's petition for review, it may not be considered on appeal. *See Cruz v. Dep't of the Navy,* 934 F.2d 1240, 1245 n. 6 (Fed. Cir.1991) (excluding documents submitted on appeal that were not before the Board); *see also United States v. Carlo Bianchi & Co.,* 373 U.S. 709, 715, 83 S.Ct. 1409, 10 L.Ed.2d 652 (1963) (describing the substantial evidence standard of review as "go[ing] to the reasonableness of what the agency did *on the basis of the evidence before it,* for a decision may be supported

by substantial evidence even though it could be refuted by other evidence that was not presented to the decision-making body") (emphasis added).

■ In any event, both Isnardi's affidavit and Pepe's handwritten letter (the only evidence presented to the full Board regarding this issue) are not "[n]ew or material evidence" within the meaning of 5 C.F.R. § 1201.115. That regulation provides, in relevant part, that the full Board "may grant a petition for review when it is established that: (1)[n]ew and material evidence is available that, *despite due diligence, was not available when the record closed* ...." 5 C.F.R. § 1201.115(d)(1) (2001) (emphasis added). Isnardi was cross-examined at length by Guirguess's counsel when he testified before the AJ. Therefore, even assuming that Isnardi's statement in Pepe's letter was "material" evidence, that evidence was fully available to Guirguess and, as he has not made a showing of due diligence and prior unavailability, it cannot be considered "[n]ew" under § 1201.115(d)(1). *See Azarkhish v. OPM*, 915 F.2d 675, 679 (Fed.Cir.1990) ("Because petitioner has failed to make a showing of due diligence and prior unavailability of the reports ... we simply cannot hold that the full Board abused its discretion in denying review of the AJ's initial decision ...."). That same reasoning applies to Isnardi's affidavit. Accordingly, neither piece of evidence justifies a remand.

We also conclude that the AJ did not err in applying the remaining pertinent *Douglas* factors in determining that removal was a reasonable penalty under the circumstances. The AJ cited a number of factors in support of his conclusion that Guirguess's "violent assault" and continual yelling and screaming had a detrimental impact on the agency's ability to perform its mission, all of which are supported by

substantial evidence. The AJ cited the testimony of Mr. Robert Towler, the Trenton facility plant manager and deciding agency official, who testified that he had lost all confidence in Guirguess and could not trust him to work in his position as a result of his offense, particularly because Guirguess was a supervisor responsible for numerous employees. Mr. Towler also testified that Guirguess had received training concerning violence in the workplace, and in fact Guirguess stipulated on the record that he had notice of the agency's zero tolerance policy and his obligation to conform his conduct to that policy. The AJ also considered Guirguess's satisfactory performance ratings during his twenty-four years of service, but found that mitigating circumstance to be insufficient to overcome the seriousness of his offense and the resulting negative impact on the workplace. We therefore conclude that, based on the narrow standard of review given to us by Congress in 5 U.S.C. § 7703(c), the AJ's determination that the agency did not abuse its discretion in imposing the penalty of removal after considering the applicable *Douglas* factors was supported by substantial evidence, was not arbitrary and capricious, and was in accordance with the law.

■ The dissent remarks that there are other issues in this case that require us to vacate and remand for further proceedings. We disagree. First, the dissent concludes that we should vacate for a determination whether there was an oral settlement in this case under our recent decision in *Tiburzi v. Dep't of Justice*, 269 F.3d 1346 (Fed.Cir.2001). *Tiburzi* has no relevance to the present appeal, however, because that case involved an oral settlement agreement entered into by the parties before the AJ that was made part of the record. *Id.* at 1349–50. Neither *Tiburzi* nor any other opinion of this court

has held that a mere allegation that the parties entered into an oral settlement agreement is sufficient to require a remand to the Board for it to consider whether such an agreement was made. We will not do so without any evidence of such an agreement in the record. *See Sargent v. Dep't of Health & Human Servs.*, 229 F.3d 1088, 1090 (Fed.Cir.2000) (finding an oral settlement agreement where AJ's decision confirmed that settlement took place during a pre-hearing telephonic conference and a written transcript of that conference was attached to that decision); *see also Boucher v. Dep't of the Treasury*, 68 M.S.P.R. 40, 43 (1995) ("Oral settlement agreements are enforceable, so long as the terms are memorialized into the record.").

In the present case, the AJ did not enter any oral settlement agreement in the record, and there is no evidence whatsoever indicating that the parties in fact entered into such an agreement. On the contrary, every letter of correspondence between Guirguess's attorney and the agency refers to a "proposed settlement Agreement" or "the agreement as offered by the [agency]." Furthermore, the agency's January 5, 2000, pre-hearing conference memorandum, which was submitted after the AJ, Guirguess's attorney, and the agency's attorney participated in a telephonic conference, states that "[a]lthough settlement was discussed the parties were *unable to reach an agreement* at the present time." None of Guirguess's pre-hearing submissions even mentions settlement, nor did Guirguess allege that there was an oral settlement in his petition for review to the full Board.* In fact, in Attachment E of Guirguess's petition for review, in an attempt to explain why the AJ found his

testimony to be untruthful, Guirguess stated that "[p]rior to hearing the case, *significant efforts were made to settle the case.* Because of these efforts, the case was not heard until very late at night. Accordingly, when appellant gave his testimony, he was hungry and he was tired." That statement is entirely inconsistent with any assertion that an oral settlement was reached.

The evidence of record reveals only that the agency conditioned any settlement of this matter on, *inter alia:* (1) Guirguess accepting a 120–day suspension without pay commencing on November 12, 1999, and ending on March 11, 2000; (2) that he use all of his accumulated sick and annual leave starting March 13, 2000; (3) that after his leave has been used up, he see an agency psychiatrist and agree that he is not eligible to return to work until he is declared mentally fit; and (4) when all of the aforementioned conditions are met, he accept employment at the Kilmer, New Jersey, facility until February 23, 2001, at which time he will retire and not seek further employment by the agency. Guirguess found that proposal to be unacceptable and refused to agree to it, and despite his bare assertion in his February 19, 2000, letter to the AJ that the proposal was "not the agreement that was discussed at the hearing," Guirguess points to no evidence indicating that such an agreement was entered into at any hearing. Indeed, no such evidence exists. We therefore decline to vacate and remand this case to the Board for it to determine whether an oral agreement was reached because there is no evidence in the record pertinent to that issue for the Board to review.

---

* Guirguess does not even clearly raise the issue whether there was an oral settlement agreement on appeal to this court. Nevertheless, because Guirguess is proceeding *pro se,* and because the dissent raises this issue, we construe his allegations liberally.

■ Moreover, to the extent that Guirguess argues that the Board should have taken the proposed settlement agreement into account when determining whether the penalty of removal was reasonable, that agreement would not have been admissible before the Board. Although the Federal Rules of Evidence do not govern Board proceedings, they provide helpful guidance for proper hearing practices. *Yanopoulos v. Dep't of the Navy*, 796 F.2d 468, 471 (Fed.Cir.1986). Federal Rule of Evidence 408 excludes evidence of settlement offers when they are offered to prove the validity or invalidity of a claim or its amount, Fed.R.Evid. 408, and the Board has adopted that rule, *see Hayden v. United States Postal Serv.*, 15 M.S.P.R. 296, 302 (1983) (citing Rule 408 as the basis for its conclusion that an "agency's offer of settlement is entitled to no weight in determining whether removal is appropriate"). We adopt the rule set forth in *Hayden,* and therefore conclude that, because the proposed settlement is not admissible for the purpose of determining whether the agency properly removed Guirguess, the Board did not err by not considering it.

■ Finally, the dissent argues that Guirguess was "seriously prejudiced" by the AJ's failure to consider Guirguess's February 19, 2000, request for time to obtain new counsel because the agency "apparently withdrew the settlement" when the AJ issued his decision nine days later. However, Guirguess's request was made over two weeks after the date that the record closed and the agency's settlement offer had expired. Regardless, Guirguess made clear to the AJ that the proposed agreement was "unacceptable to me, and I refuse to sign it." Moreover, we see no evidentiary basis to support Guirguess's assertion on appeal that his counsel "was ill and tired and refused to complete cross-examination." Rather, we find that Guirguess's counsel provided adequate representation and fully cross-examined each agency witness at the hearing before the AJ. We therefore conclude that Guirguess was not prejudiced by the AJ's refusal to consider his request for new counsel after settlement negotiations had failed, all of the evidence had been received, and the AJ was ready to render his decision.

Because the Board's decision was supported by substantial evidence and was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, we affirm.

NEWMAN, Circuit Judge, dissenting.

This case raises five questions, all matters of fairness and due process, impinging on the integrity of the MSPB role in employment matters.

1. After Mr. Guirguess and the Postal Service had agreed on settlement and transfer, Guirguess' counsel had sent the administrative judge, in error, a copy of a five-year-old agreement relating to a different case. Guirguess wrote the administrate judge with a correct copy, wrote that in the written agreement the Postal Service had changed the transfer location from that which had been orally agreed, and asked the administrative judge for time to obtain new counsel. The AJ did not respond, and nine days later issued a decision affirming Mr. Guirguess' removal. This ended the settlement. That cannot be the "fairness" intended for the MSPB role.

2. There is also an important question of binding oral settlement, as required by this court's recent decision in *Tiburzi v. Dept. of Justice,* 269 F.3d 1346 (Fed.Cir. 2001).

3. The record is not as one-sided and inflammatory as recited by the majority. Although Mr. Guirguess was quite short on self-control, despite the hazards of im-

proper asbestos removal procedures, the AJ's decision to sustain Guirguess's firing was not based on his agitated over-reaction, but on "assault." However, the elements of assault were neither charged nor found. The removal was for improper conduct. MSPB procedures, as well as due process, require precision of the charge, so that it can be defended.

4. The Board in its standard form letter denying review for lack of new evidence, simply ignored the proffered new evidence that negated any intent to assault. Thus the review contemplated in the MSPB was not achieved, as the Board let stand the AJ's decision on a ground that was neither charged nor supported.

5. The *Douglas* factors require consideration of whether the offense was intentional, as well as the employee's general performance record. When these aspects are fairly considered, the Board's decision requires redetermination.

### 1.

After settlement had been agreed, the Postal Service presented Mr. Guirguess with a written settlement, but with a different transfer location (Kilmer) than had been orally agreed (Monmouth). After Mr. Guirguess's lawyer sent the AJ a copy of the wrong document, Mr. Guirguess sent the correct one and voiced his frustration with the altered term. Specifically, Mr. Guirguess told the AJ that the Postal Service had changed the transfer location. Guirguess asked the AJ for "indulgence" for time to obtain a new attorney to resolve the discrepancy. The administrative judge released his adverse decision nine days later.

The panel majority states that the AJ was correct in ignoring Guirguess's request because it came after the settlement offer had "expired." The Postal Service's documents state no expiration date. Per-

haps the majority is referring to Guirguess' attorney's request to the AJ to give Guirguess until February 4 for "receipt of the settlement," the attorney meanwhile leaving the country. The record shows no notice to Guirguess of any deadline, no response from the AJ, no deadline from the Postal Service, no notice from the AJ that time would run out, and no response to Guirguess' request for time to find a new attorney.

Mr. Guirguess' request for time to locate new counsel is not a trivial matter. The AJ's silence upon Guirguess' request, followed by an adverse decision that sabotaged settlement, is unconscionable. The issuance of the decision sealed Guirguess' firing, although the AJ was told of the settlement and Mr. Guirguess had sent the AJ a copy of a complete agreement, citing the changed transfer location, and asking for time to locate new counsel. This hasty and fundamentally prejudicial action had far-reaching consequences, inconsistent with the fairness that is intended for MSPB procedures.

### 2.

This case is now governed by *Tiburzi v. Dep't of Justice*, 269 F.3d 1346 (Fed.Cir. 2001). Although I dissented from that decision, it is the law of this court. It is not dictum. *Tiburzi* did not turn on whether the "oral" terms were memorialized on the hearing record, as the panel majority proposes. The oral agreement in *Tiburzi* was held binding, although both sides explicitly stated that it would be reduced to writing and signed, and the agency changed the terms in reducing the agreement to writing. That is what happened here.

The Postal Service's pre-hearing conference memorandum summarizes the discussion before settlement was reached.

Agreement to settle, with transfer to another location, was reached on the day of the hearing, but the written agreement stated a different location from that which Guirguess says was agreed. Although the panel majority points out that the parties labeled their correspondence "proposed settlement," the correspondence in *Tiburzi* was also so described.

The only question is whether there was in fact a complete agreement as *Tiburzi* characterizes completeness, for if there was then the settlement was completed before Administrative Judge Fishman's decision. With his letter requesting time to obtain a new lawyer, Mr. Guirguess informed the administrative judge that the transfer location had been changed in the written agreement, a change to which he objected. However, in view of the virtual identity of facts to those of *Tiburzi*—an oral settlement, after which the agency changed a term in the written agreement—*Tiburzi* requires that both parties are bound to the oral settlement.

At a minimum, this case should be remanded for consideration in view of *Tiburzi*, which was decided after these events.

### 3.

Mr. Guirguess was found by the administrative judge to have committed an "assault." This was the ground on which his removal was affirmed. The AJ's decision was not based on Mr. Guirguess' agitated response to the improper asbestos removal, but on intentional injury to Mr. Isnardi's finger. However, the AJ failed to find or infer intent.

Mr. Guirguess, a supervisor, was summoned by his employees concerned with exposure to asbestos. Upon arriving, he saw Mr. Isnardi chipping at the floor tiles with a hammer and chisel. Mr. Isnardi was surrounded by small yellow barriers and was wearing a protective mask. The employees were "standing around," refusing to work for fear of "unsafe conditions" from airborne asbestos released by Mr. Isnardi. Faced with employees unwilling to work in an environment that is a well-publicized health risk, Guirguess told Isnardi to stop. Isnardi directed Guirguess to his supervisor, William Gienz. There followed a telephone conversation, reported to be long and loud, which failed to resolve the issue when Gienz hung up on Guirguess.

I am surprised at the panel majority's repeated references to the chipping as an approved procedure. Whether Isnardi had permission to perform the task is irrelevant to the perceived dangers of chipping at asbestos in an open area in which people are working, or to a supervisor's responsibility to protect the workplace. There was no evidence that Gienz or Isnardi acted to allay Mr. Guirguess' safety concerns at the time of the incident. Despite the panel majority's contrary finding, Mr. Gienz did not "assure" Mr. Guirguess that open air chipping of asbestos with hammer and chisel, while others worked or watched, was a safe and acceptable asbestos practice. Mr. Gienz, in a written statement made after the incident, explained to the agency that chipping was okay because it "did not involve drilling or any other method by which asbestos fibers could be released into the air." Gienz did not say that he provided this assurance to Guirguess at the time, nor does the record state that anyone else provided such assurance. Nor does the record state that asbestos chipping in a populated area is an approved and safe procedure; indeed, it is inconceivable that it would be.

Apparently my colleagues on this panel believe that Mr. Guirguess should have allowed the chipping to continue after the supervisor refused to halt the work. In-

deed, had he done so, he might not have lost his job. It is undisputed that Guirguess agitatedly kicked Isnardi's tools away from the work site, kicked or threw the yellow signs that Isnardi had placed on the floor, and in the course of this tirade stepped on Isnardi's finger. Isnardi went to a hospital, where he was diagnosed with a "contusion" to his right fifth digit. His fourth and fifth fingers were taped together and he left two hours after the incident. Thus I marvel at the majority's reference to "amputation concern." No doctor so testified, and the medical report in the record refers only to the contusion to the pinky. Although the government adduced Isnardi's testimony that he was diabetic and that broken bones do not always heal properly for diabetics, it was clear that this was irrelevant.

The administrative judge found that Mr. Guirguess had committed an "assault," an act that requires intent to injure. However, no finding of intent was made. The majority concludes that the AJ inferred the intent to injure. However, the use of the legal term "assault" does not silently create a finding of intent.

An inference of intent must have some evidentiary support. The only evidence was that the accused action was not deliberate. Isnardi testified that after Guirguess kicked the tools, "[h]is foot came back down, [and] it landed on my two fingers on my right hand." Isnardi testified that he had to tell Guirguess that his foot was on his hand. It is not a dignified picture. However, it does not show an intent to injure Isnardi. And Gienz, to whom the panel majority points for "collaboration" of Isnardi's testimony, provided no evidence of intent to injure. Gienz was not there, and he wrote in his post-accident report only that Isnardi's hand

had been stepped on. Mr. Isnardi, the only Agency witness present at the incident, subsequently averred that the act was not intentional.

The absence of intent is highlighted by Isnardi's affidavit. After the administrative judge based his decision on assault, Isnardi averred that the incident was accidental. Isnardi stated: "It is my position now and it has always been my position that Petitioner, Waguih Guirguess, did not intentionally or maliciously injure my right 5th finger on June 3, 1999." Isnardi explains in the affidavit that he so stated to both attorneys and the administrative judge. Indeed, there was no contrary evidence. "Assault" requires a deliberate act, an intent—not agitated movement, however irrational.

The AJ's conclusion of assault surely is not supported by substantial evidence, for it is not supported by any evidence at all.

4.

After the administrative judge's finding of an "unprovoked assault," the union investigator, Joseph Pepe, wrote a letter to the full Board, submitted with Guirguess' appeal from the AJ's decision. Pepe wrote that "Mr. Isnardi told me that he knew that George [Guirguess] did not intentionally injure him." The Board, by form letter, dismissed the appeal for lack of "new evidence." However, this was indeed new evidence, the only evidence on the ground on which the AJ based his decision.

The panel majority states that Guirguess should have presented these exculpatory statements at the hearing. However, the charge of "assault" was not at issue at the hearing; the Postal Service's removal action for "improper conduct" was based on Guirguess' "physical and verbal alterca-

tion" with Isnardi. The term "assault" and its essential predicate of intent was not an issue at the hearing.

Indeed, Mr. Pepe's investigative report negated a charge of intent to injure. It is not irrelevant that Guirguess could not have presented Pepe's report at the hearing, because it was withheld by the Postal Service and his two attempts to obtain the report were unsuccessful.

The evidence of intent became critical only after the AJ's decision. After the AJ based his decision on a ground that was not at issue, the Board had the obligation to consider the evidence, or at least to remand to an AJ to assure its consideration. The perfunctory issuance of a form statement that there was no new evidence was improper, and requires correction on this appeal, lest this court's appellate responsibility become equally perfunctory.

### 5.

Application of the factors established in *Douglas v. Veterans Administration*, 5 MSPB 313, 5 M.S.P.R. 280 (1981) requires analysis of "[t]he nature and seriousness of the offense, and its relation to the employee's duties, position, and responsibilities, including whether the offense was intentional or technical or inadvertent, or was committed maliciously or for gain, or was frequently repeated." 5 MSPB 313, 5 M.S.P.R. at 305. Whether the offense was intentional is a highly relevant *Douglas* consideration. The Postal Service does not dispute Mr. Guirguess' twenty-plus years of exemplary service, his record of evaluations as a superior employee, his promotions, and his successful performance of increasing responsibilities. While the record shows an unusually agitated reaction to the improper release of

asbestos into the air, the remedy must be considered in light of the provocation. Indeed, were Mr. Guirguess's behavior so heinous, the Postal Service's agreement to a settlement that retained Mr. Guirguess in employment cannot be understood.

For these reasons, I dissent.